702 So.2d 797 (1997)
Ronney D. SPELL, Plaintiff-Appellee,
v.
CONN APPLIANCES, INC. and Connecticut Indemnity Insurance Company, Defendants-Appellants.
No. 97-309.
Court of Appeal of Louisiana, Third Circuit.
October 8, 1997.
*798 Richard R. Montgomery, Lafayette, for Ronney D. Spell.
Katherine Marie Loos, Lafayette, for Conn's Appliances, Inc.
Before THIBODEAUX, COOKS and SULLIVAN, JJ.
SULLIVAN, Judge.
Defendants, Conn Appliances, Inc. (Conn's) and Connecticut Indemnity Insurance Company, appeal an award from the Office of Workers' Compensation (OWC) in favor of claimant, Ronney D. Spell. For the following reasons, we affirm in part, reverse in part, and render.

Discussion of the Record

a. Facts and procedural history.
Spell, a seven-year employee of Conn's, injured his neck and back on January 27, 1995, as he and a co-worker delivered a thirty-five-inch television set, weighing approximately 300 pounds, to a customer's home. Thereafter, Spell worked on light duty status through February 14, 1995, when Conn's began paying him temporary total disability (TTD) benefits of $323.00 per week. Conn's terminated these benefits on August 22, 1995, after reviewing the report of Dr. James Lafleur, an orthopedic surgeon appointed by the OWC for an independent medical examination.
Spell filed a disputed claim for compensation on October 19, 1995. After a trial on May 9, 1995, the hearing officer issued written reasons in which she found that Spell had interfered with Conn's right to have him examined by a physician of its choice. She ordered that Spell be examined by Dr. Gregory Gidman and that the record remain open for this report. After considering Dr. Gidman's report, the hearing officer ruled on December 5, 1995 that Spell proved entitlement to (1) TTD benefits from August 22, 1994, the date benefits were terminated, through September 10, 1996, the date of Dr. Gidman's final report; (2) all medical expenses incurred after the termination of benefits; (3) mileage; and (4) a twelve percent penalty on all unpaid compensation and $1,500.00 in attorney fees.

b. Medical evidence.
During the two and a half weeks that Spell continued to work after the accident, he sought treatment at a walk-in clinic, where he received prescriptions for Tylox, Robaxin, and Toradol. However, his condition worsened to such a degree that he had to be taken by ambulance to a hospital emergency room on February 14, 1995. The next day, he began treatment with Dr. Michel Heard, an orthopedic surgeon.
At his initial examination, Dr. Heard observed a normal range of cervical motion, but midline tenderness in the neck. Concerning the lumbar spine, Dr. Heard noted moderate limitation of right and left bending, with muscle spasm and marked tenderness in the right paralumbar area. He injected the area of tenderness and spasm with Celestone and Marcaine and recommended that Spell undergo a CT scan. That test revealed mild bulging at L3-4 and L4-5, a conjoined nerve root sleeve anomaly at L5-S1, and minimal foraminal narrowing due to facet hypertrophy, or lumbar spondylosis. Based upon these results, Dr. Heard recommended that Spell undergo physical therapy and that he continue his medications. Dr. Heard concluded that Spell was unable to return to his job at that time.
While undergoing physical therapy, Spell continued to receive treatment from Dr. Heard and reported constant neck and low back pain that radiated to the right hip and upper leg. He reported that physical therapy and medications brought only temporary relief. Throughout his treatment, Dr. Heard noted a markedly tender spot in the right paralumbar area, where he frequently administered Celestone and Marcaine block injections. Dr. Heard also changed his medications to Darvocet, Feldene, and Flexeril.
An MRI taken in March 15, 1995 was within normal limits, and in April of 1995 Spell reported some improvement: he said that physical therapy was helping and that *799 his pain was intermittent rather than constant. However, in May of 1995, Spell was taken to the emergency room again for an acute exacerbation of lumbar pain. Dr. Heard ordered another CT scan on May 10, 1995 that revealed mild facet hypertrophy at L1-2 and L2-3, minimal disc bulges at L3-4 and L4-5 with no evidence of herniation, and an "equivocal abnormality" at L5-S1 that led the radiologist to suspect herniation. The conjoined nerve root sleeve on the right at L5-S1 was also evident again.
At his next examination, May 11, 1995, Dr. Heard noted that Spell could not lift his left leg. Dr. Heard recommended a myelogram and CT scan with contrast, two tests that the workers' compensation insurer did not approve until September of 1995. Dr. Heard still believed that Spell was unable to work and had not reached maximum medical improvement.
On May 25, 1995, Spell reported to the office of Dr. Gregory Gidman, an orthopedic surgeon, at the request of his employer's insurer. Dr. Gidman did not examine Spell on that date because Spell claimed that his pain prevented him from disrobing without assistance. After viewing x-rays, an MRI, and the CT scan of May 10, 1995, Dr. Gidman concluded that Spell no longer needed physical therapy because it had not produced any improvement thus far and that Spell required no further diagnostic testing because his extensive past radiographic workup was essentially normal. Dr. Gidman also did not believe Spell's pain was so extreme as to prevent him from disrobing, considering that Spell, a solid, muscular man, sustained only a "low-impact" injury. On June 27, 1995, Dr. Gidman prepared an additional report in which he stated that Spell could perform light to moderate activities with limited bending.
Spell continued to see Dr. Heard, complaining of neck pain that radiated to his right upper arm, occasional headaches, and back pain that radiated to the lower right leg and foot. Dr. Heard consistently noted tenderness in the right paralumbar area, which he treated with epidural block injections. Dr. Heard still maintained that Spell was disabled from his former job, but he encouraged Spell to increase his tolerance for sedentary to light activities.
On August 8, 1995, Dr. James Lafleur performed an independent medical examination at the request of the OWC. Dr. Lafleur reported that his examination revealed no deformities, spasm, or tenderness to palpation in the lumbar area. He considered the x-rays and the MRI to be within normal limits and noted that the two CT scans showed lumbar spondylosis, with no stenosis or herniations. He disagreed with the radiologist's reading that the second CT scan revealed an equivocal abnormality at L5-S1. In his final report, Dr. Lafleur stated that he "would favor this man returning to his pre-injury work status."
On September 18, 1995, Spell underwent cervical and lumber myelograms and post-myelogram CT scans. Both tests of the cervical spine were unremarkable. The lumbar myelogram revealed a small, ventral extradural defect at L4-5 and the conjoined nerve root sleeve at L5-S1. The lumbar CT scan showed asymmetry of epidural fat at L3-4, mild diffuse bulging to the right at L3-4 and L4-5, with no focal disc protrusion or neural foraminal] compromise, and at L5-S1, a minimal diffuse bulge to the right with "no conclusive evidence" of focal disc protrusion or neural foraminal compromise.
After reviewing these results, Dr. Heard concluded that Spell did not have a surgical problem. He diagnosed Spell with chronic pain syndrome and recommended continued conservative treatment, including medications and injections in the symptomatic area. He still believed that Spell was disabled from working, but he thought that Spell should increase light and sedentary activities as tolerated.
On October 31, 1995, Spell was examined by another orthopedic surgeon, Dr. John Schutte, upon referral from his internist. Dr. Schutte noted that Spell exhibited limited flexion and extension of the lumbar spine, with pain upon rotation. Dr. Schutte opined that the myelogram and CT scans did not reveal any significant bony defects or nerve root impingement and that the x-rays were normal, except for mild facet hypertrophy. *800 He believed that Spell's pain was caused by mild, degenerative disc disease, and he recommended a stretching program for the back, a prescription for Relafen, and a return appointment in six weeks. He believed that Spell could perform medium work.
Upon finding that Spell interfered with the employer's right to an examination by a physician of its choice, the hearing officer ordered that Spell submit to another examination by Dr. Gidman. At this evaluation, which occurred on September 10, 1996, Dr. Gidman observed that Spell exhibited marked limitation of lumbar motion, but with no spasm or muscle atrophy. Dr. Gidman further reported that Spell appeared to be "in extreme distress, moving very slow, heavy breathing, and just looking totally, completely and absolutely miserable." Finding no anatomical abnormalities, Dr. Gidman recommended a Functional Disability Evaluation with validity checks. If Spell did not validate the testing, then Dr. Gidman believed he should be able to resume normal activities.
After reviewing the myelograms and CT scans with contrast, Dr. Gidman prepared a supplemental report in which he stated that, except for minimal, smooth, concentric bulging at L4-5 and L5-S1, the tests were normal, with no evidence of any facet arthropathy, nerve root compression or disc pathology.

c. Testimony at trial.
Spell testified that his condition at the time of trial had only slightly improved since the accident. He had attempted several activities at his home, such as planting, mowing, and carpentry, but he was never able to complete these projects. At first, he testified that he believed he could perform light duty work, but when asked specifically what tasks he could do, he replied that he could only answer the telephone, a sedentary activity. His wife, Cynthia, testified that Spell cannot be still for any length of time and that he alternates between sitting, standing, and lying down.
Lionel Bordelon, a vocational rehabilitation counselor who performed a labor market survey on behalf of an adjusting firm, testified that he mailed three lists of local, available jobs to Spell's attorney in September of 1995. Those jobs included light, medium, and heavy positions that paid between $5.00 and $7.00 an hour. He defined light duty as requiring the lifting of eleven to twenty-four pounds. Bordelon admitted that if Spell could lift only ten pounds maximum, he could not perform light duty employment.

Opinion

a. Disability.
In their first assignment of error, defendants contend that the hearing officer erred in awarding Spell TTD benefits in the amount of $323.00 per week. They argue that the hearing officer improperly discounted the testimony of the court-appointed expert, Dr. Lafleur, and that Spell failed to prove total disability by clear and convincing evidence.
An employee is entitled to receive TTD benefits only if he proves by clear and convincing evidence that he is physically unable to engage in any employment or self-employment. La.R.S. 23:1221(1)(c); Stelly v. Guy Scroggins, Inc., 96-401 (La.App. 3 Cir. 10/9/96), 682 So.2d 782, writ denied, 96-3060 (La.2/7/97), 688 So.2d 503. To prove a matter by clear and convincing evidence means to demonstrate that the existence of a disputed fact is highly probable, i.e., much more probable than its nonexistence. Bundren v. Affiliated Nursing Homes, Inc., 94-808 (La. App. 3 Cir. 2/1/95), 649 So.2d 1177. In the context of a workers' compensation claim, "there must be objective medical evidence to carry the burden of proving disability by clear and convincing evidence." Cormier v. Resthaven Nursing Home, 95-230, p. 5 (La. App. 3 Cir. 1/17/96), 670 So.2d 233, 237. Additionally, La.R.S. 23:1317(A) provides, in part, that "all compensation payments provided for in this Chapter shall mean and be defined to be for only such injuries as are proven by competent evidence, or for which there are or have been objective conditions or symptoms proven, not within the physical or mental control of the injured employee himself." (Emphasis added.)
The issue of disability is a factual determination that the hearing officer makes *801 only after weighing both the medical and lay testimony in the record. Fritz v. Home Furniture-Lafayette, 95-1705 (La.App. 3 Cir. 7/24/96), 677 So.2d 1132. Factual findings of the hearing officer may not be disturbed unless they are manifestly erroneous or clearly wrong. Id. Recently, in Banks v. Industrial Roofing & Sheet Metal Works, Inc., 96-2840, pp. 7-8, (La.7/1/97), 696 So.2d 551, 556, the supreme court reiterated the principles of the manifest error review:
In applying the manifest error-clearly wrong standard, the appellate court must determine not whether the trier of fact was right or wrong, but whether the factfinder's conclusion was a reasonable one. Freeman [v. Poulan/Weed Eater ], 93-1530 at p. 5 [ (La.1/14/94) ], 630 So.2d [733] at 737-738; Stobart v. State, 617 So.2d 880, 882 (La.1993); Mart v. Hill, 505 So.2d 1120, 1127 (La.1987). Where there are two permissible views of the evidence, a factfinder's choice between them can never be manifestly erroneous or clearly wrong. Stobart, 617 So.2d at 882. Thus, "if the [factfinder's] findings are reasonable in light of the record reviewed in its entirety, the court of appeal may not reverse, even if convinced that had it been sitting as the trier of fact, it would have weighed the evidence differently." Sistler v. Liberty Mut. Ins. Co., 558 So.2d 1106, 1112 (La. 1990).
The record reveals a great divergence of opinion among the four orthopedic surgeons that examined Spell. Of the four, only Dr. Lafleur favored an unconditional return to his former job; only Dr. Heard considered him totally disabled. Dr. Schutte, who saw Spell on October 31, 1995, released him to medium work, with the recommendation that he undergo a stretching exercise program. At his first evaluation of May 25, 1995, Dr. Gidman also believed Spell was capable of only light to moderate activities, with limitations on bending; after his subsequent examination on September 10, 1996, Dr. Gidman recommended a return to normal duties, but only after testing to determine the validity Spell's complaints.
"[A]lthough the court-appointed expert's opinion must be considered prima facie true, the opinion of the court-appointed expert is not conclusive." Watkins v. Asphalt Assoc., Inc., 96-249, p. 8 (La.App. 3 Cir. 12/14/96), 685 So.2d 393, 398. In appointing an independent medical examiner, the hearing officer "does not cede the responsibility afforded her office." Menard v. Winn Dixie Louisiana, Inc., 93-1497, p. 13 (La.App. 3 Cir. 6/1/94), 640 So.2d 775, 783.
Defendants argue that three well-respected physicians disagreed with Dr. Heard; therefore, the hearing officer erroneously credited his opinion. Yet, as discussed above, the doctors who disagreed with Dr. Heard did not agree among themselves. Presented with this conflicting evidence, the hearing officer gave great weight to the physician who observed Spell over a ten-month period. When we consider the other medical and lay testimony in the record, we find no error.
Defendants also argue that Spell failed to produce objective evidence of his claimed disability. Yet, the numerous diagnostic tests consistently revealed abnormalities in Spell's lumbar spine, including spondylosis, three discs bulging to the right, and a right conjoined nerve root sleeve at L5-S1. These results are consistent with Dr. Heard's frequent notation of marked tenderness in the right paralumbar region, the cortisone injections administered to that area, and Spell's continued complaints of pain in the right leg. Additionally, Dr. Heard never released Spell to return to work. At the time of his last visit, he believed that Spell suffered from chronic pain syndrome and still needed medications and cortisone injections. Although Dr. Schutte released Spell to medium duty, he, too, found Spell's complaints of pain credible, diagnosing degenerative disc disease and recommending further treatment, including medications and a stretching exercise program for his back.
In addition to the medical evidence, Spell testified that he is in constant pain and able to do only sedentary activities such as answering the telephone. His wife described how Spell cannot sit still for any length of time, constantly alternating sitting, standing, and lying down. Before this accident, Spell *802 worked for seven years as an appliance deliveryman/driver. During that time, he never reported any other back injury or filed any other workers' compensation claim.
Although this case presents a close question, the hearing officer resolved it in favor of Spell, largely based upon her credibility determinations. As an appellate court, we can only reverse if we find those credibility determinations are manifestly erroneous. Because Spell's complaints are supported by objective medical findings and lay testimony, we decline to substitute our opinions for the hearing officer's findings.

b. Medical expenses.
Defendants next argue that the hearing officer erred in awarding Spell medical expenses incurred through September 10, 1996. In light of our discussion on disability, we find no error in the award of medical expenses. Even if we agreed that Spell was no longer totally disabled, we find that the record clearly supports an award of additional medical expenses. The second CT scan revealed two bulging discs and an "equivocal abnormality" at a third level that raised the suspicion of herniation. The myelograms and CT scans taken after Spell's benefits were terminated confirmed that this defect was another disc bulge, although without evidence of herniation. Although Dr. Schutte found Spell capable of medium work, he prescribed additional medications, recommended a back stretching program, and scheduled a return visit. From these reports, we find that the medical expenses incurred after August 22, 1995 were a reasonable and necessary result of Spell's work-related injury. Therefore, this assignment of error has no merit.

c. Penalties and attorney fees.
Defendants also contest the award of a twelve percent penalty on all unpaid compensation installments and $1,500.00 in attorney fees.
The hearing officer relied upon the much-cited case of Walker v. Gaines P. Wilson & Son, Inc., 340 So.2d 985 (La.1976), reasoning that defendants improperly ignored subsequent reports of disability after Dr. Lafleur released Spell to full duty. The pertinent language in Walker is as follows:
However, if subsequent to an initial optimistic report, an insurer receives medical information indisputably showing disability at a subsequent date, the insurer may not blindly rely upon the early report and solely on its basis avoid penalties for arbitrary non-payment of compensation benefits indisputably due a disabled workman.
Id. at 988 (citations omitted) (emphasis added).
Considering the vast difference of opinion among the doctors concerning Spell's disability and the interpretation of diagnostic testing, we cannot agree that the reports received subsequent to Dr. Lafleur's indisputably established Spell's entitlement to TTD benefits. Dr. Heard's reports only reiterated his previously expressed opinions, and Dr. Schutte did not consider Spell totally disabled, having released him to medium work.
It is well settled that an employer or insurer should not be penalized for seeking judicial resolution of close factual issues. Trudell v. State, Office of Risk Management, 465 So.2d 184 (La.App. 3 Cir.1985). In the instant case, the physicians offered three opinions about the extent of Spell's disability and even disputed what was shown on the various diagnostic films. When we consider the divergence of opinion and that the defendants relied upon the court-appointed expert's conclusions, we find that the hearing officer clearly erred in imposing penalties and attorney fees. See Watkins, 685 So.2d 393.

Decree
For the above reasons, the order of the Office of Workers' Compensation is reversed insofar as it awards plaintiff, Ronney D. Spell, penalties and attorney fees; in all other respects, the order is affirmed. Costs of this appeal are assessed one-fourth to plaintiff and three-fourths to defendants, Conn Appliances, Inc. and Connecticut Indemnity Insurance Company.
AFFIRMED IN PART; REVERSED IN PART; AND RENDERED.