# STATE OF LOUISIANA
## COURT OF APPEAL, THIRD CIRCUIT

## 07-1061


SHANNON CAMPBELL

VERSUS

CITY OF LEESVILLE


\*\*\*\*\*\*\*\*\*\*\*\*


**APPEAL FROM THE**
**OFFICE OF WORKERS' COMPENSATION, DISTRICT 2**
**PARISH OF RAPIDES, NO. 06-02992**
**JAMES L. BRADDOCK, WORKERS' COMPENSATION JUDGE**


\*\*\*\*\*\*\*\*\*\*\*\*


**JAMES T. GENOVESE**
**JUDGE**


\*\*\*\*\*\*\*\*\*\*\*\*


Court composed of Oswald A. Decuir, Michael G. Sullivan, and James T. Genovese, Judges.


**AFFIRMED AS AMENDED AND RENDERED.**


Randall B. Keiser
D. Heath Trahan
Keiser Law Firm, P.L.C.
Post Office Box 12358
3700 Jackson Street, Suite 102
Alexandria, Louisiana 71315-2358
(318) 443-6168
COUNSEL FOR DEFENDANT/APPELLANT:
    City of Leesville

**Maria A. Losavio**
**Losavio Law Office, L.L.C.**
**Post Office Box 12420**
**1821 MacArthur Drive**
**Alexandria, Louisiana 71315-2420**
**(318) 767-9033**
**COUNSEL FOR PLAINTIFF/APPELLEE:**
    **Shannon Campbell**

**GENOVESE, JUDGE.**

In this workers' compensation case, the employer is appealing a judgment awarding claimant medical and indemnity benefits and assessing the employer with penalties and attorney fees. The claimant has answered this appeal seeking additional attorney fees for work done on appeal. For the following reasons, we affirm, amend, and render.

## FACTS

The claimant, Shannon Campbell (Mr. Campbell), sustained a left ankle injury as the result of a work-related accident on May 24, 2005 during the course and scope of his employment as an inmate supervisor with the City of Leesville (the City). As a result thereof, Mr. Campbell received indemnity benefits of $236.00 per week until August 20, 2006, when said benefits were terminated by the City.

Following his work-related injury, Mr. Campbell was first seen by his family physician, Dr. Loi Vo. Dr. Vo ordered an x-ray and an MRI of Mr. Campbell's left ankle, both of which were normal. According to Dr. Vo, Mr. Campbell could not return to work from the date of his work-related accident through his referral of Mr. Campbell to Dr. David DeLapp, an orthopedist.

Mr. Campbell was first treated by Dr. DeLapp on August 11, 2005. Dr. DeLapp ordered physical therapy for Mr. Campbell and was of the opinion that he was unable to return to work at that time. On September 13, 2005, Dr. DeLapp requested an EMG nerve conduction study of the left lower extremity and prescribed a right-handed walking cane for Mr. Campbell due to his left ankle instability. Dr. DeLapp's report of November 13, 2005 states that Mr. Campbell had undergone the EMG by Dr. Michael Dole[1] on October 24, 2005. By November of 2005, Dr. DeLapp

_____

[1]Dr. Michael Dole is a board certified physician in both physical medicine and rehabilitation and internal medicine.

1

anticipated that Mr. Campbell would reach maximum medical improvement (MMI) in one month at which time he would obtain a functional capacity evaluation (FCE) and disability rating. Dr. DeLapp did not release Mr. Campbell to return to work. On December 8, 2005, Dr. DeLapp's assessment was that Mr. Campbell had reached MMI, and, therefore, he requested the FCE and referred Mr. Campbell to Dr. Dole for chronic pain management.

Mr. Campbell underwent the FCE on January 17, 2006 and was found to be capable of performing light duty work. When Mr. Campbell returned to Dr. DeLapp on February 21, 2006, he was at MMI; however, Dr. DeLapp felt that Mr. Campbell would continue to live with chronic pain. Dr. DeLapp reiterated that he would like Mr. Campbell to treat with Dr. Dole for chronic pain management, and he requested that a disability rating be obtained. The disability rating was done by Dr. Dole on March 13, 2006, and Mr. Campbell was assigned a thirty percent whole person impairment rating. At that time, Dr. Dole agreed with Dr. DeLapp that Mr. Campbell was at MMI.

Mr. Campbell returned to see Dr. DeLapp on March 21, 2006, complaining that he had developed right ankle pain and right shoulder pain from his use of the cane. Dr. DeLapp was of the opinion that "[i]t was more likely than not that the right ankle and right shoulder [pain were] due to the severe left ankle and foot problem[s]. . . ." He explained that the strain put on his right shoulder with the walking cane probably caused the shoulder problems, and the overuse of the right ankle due to the left ankle injury probably caused the right ankle problems. Dr. DeLapp, therefore, requested authorization to evaluate Mr. Campbell's right ankle and right shoulder.

Due to continued and worsening right ankle and right shoulder complaints, Dr. DeLapp's plan on May 16, 2006 was to obtain an MRI of Mr. Campbell's right

2

shoulder and an MRI of his right ankle. These suggested MRIs were not authorized by the City.

Mr. Campbell saw Dr. Dole for pain management on April 11, 2006. On the return visit of May 8, 2006, Mr. Campbell complained of right ankle and right shoulder pain. Mr. Campbell returned to see Dr. Dole on June 6, 2006. The following day, Dr. Dole had a conference with Lisa Span, the vocational rehabilitation counselor. After reviewing Mr. Campbell's medical treatment, and in light of his right ankle and right shoulder complaints, on June 7, 2006, Dr. Dole changed his opinion regarding MMI status and opined that Mr. Campbell "would not be at MMI until this was evaluated and addressed." In Dr. Dole's opinion, Mr. Campbell was not able to return to work in his original position as inmate supervisor at this time.

Pursuant to the City's request for a second medical opinion, Mr. Campbell saw Dr. Gordon Mead, an orthopaedic surgeon, on June 28, 2006, complaining of constant left foot and ankle pain, right ankle pain, and right shoulder pain. Dr. Mead opined that Mr. Campbell "may very well have a rotator cuff tear of his right shoulder, but [he was] unable to relate that injury-wise to his left ankle." Additionally, according to Dr. Mead, "[t]he use of a cane over a prolonged period of time should not cause a rotator cuff tear. . . . " Dr. Mead agreed with the FCE and felt that Mr. Campbell had reached MMI and concluded that no further medical evaluation or treatment was needed.

Mr. Campbell returned to see Dr. Dole on July 3, 2006. On that visit, Dr. Dole opined that although not at MMI, Mr. Campbell was able to return to work in the modified job of a clearing supervisor. Both on August 7, 2006 and August 28, 2006, Dr. Dole maintained his opinion that Mr. Campbell was not at MMI, but he did feel

3

that he was capable of performing the sedentary position of clearing supervisor.

Mr. Campbell also continued to treat with Dr. DeLapp. Dr. DeLapp's July 27, 2006 report documents Mr. Campbell's complaints of left ankle pain, right shoulder pain, and right ankle pain. Dr. DeLapp noted that he was "waiting on the MRI of [Mr. Campbell's] right ankle and right shoulder." According to Dr. DeLapp, Mr. Campbell was not at MMI at this time. Dr. DeLapp indicated that Mr. Campbell was "currently unable to return to work at this time due to the fact that he is still pending further evaluation of his right shoulder and ankle with MRIs and[,] therefore, not at maximum medical improvement." Dr. DeLapp's opinion remained unchanged after Mr. Campbell's August 15, 2006 visit. On September 26, 2006, Dr. DeLapp "[c]ontinue[d] to recommend [an] MRI of his right shoulder and right foot" and maintained that Mr. Campbell was "temporarily totally disabled and off work."

Mr. Campbell followed up with Dr. Dole on October 2, 2006. By this time, he had been terminated by the City for his failure to show up for work as a gas attendant, which was a position that had been approved by Dr. Dole. However, following the October 2, 2006 visit, Dr. Dole changed his opinion and reported that Mr. Campbell was not at MMI and that he had erred in approving the gas attendant position. Dr. Dole noted that he had spoken to Dr. DeLapp and that he now realized that the proper evaluation had not been done "and MRIs need[ed] to be approved and treatment rendered per Dr. DeLapp before Mr. Campbell [could] be placed at MMI." Dr. Dole explained that once he "had the full picture of what Dr. DeLapp was concerned about and what he was trying to have evaluated and was not allowed to evaluate, because it was never approved, it became apparent that he was . . . that [Mr. Campbell] should not have been returned to work prior to this. . . . " On October 31, 2006, Dr. Dole maintained that Mr. Campbell was not at MMI and that he was not able to return to

4

work, even at a sedentary position. On that date, Dr. Dole provided the following explanation:

> As far as returning to work goes, I think I was quite clear in my prior letter that after I had extensively reviewed his chart and discussed the case with Dr. DeLapp, it became apparent that his shoulder had not been adequately evaluated and treated. I do consider this to be part of his work-related injury, as does Dr. DeLapp, and this needs to be appropriately evaluated. I think that the FCE has overstated his true abilities. In addition, he will need to have his rotator cuff damage attended to at his right shoulder before we can consider return to work discussions.

As of November 30, 2006, Dr. DeLapp was "still recommend[ing an] MRI of the right shoulder and foot . . . to confirm the diagnosis and begin either operative or nonoperative treatment." Dr. DeLapp noted that Mr. Campbell would "continue to remain temporarily totally disabled until [he] had the . . . questions answered."

Later, on December 12, 2006, Dr. Dole again stated that he "consider[ed] Mr. Campbell to be disabled and unable to return to work" and that he felt the "FCE overstated his true abilities, and his right rotator cuff tendinitis appear[ed] to be secondary to overuse of the arm due to his ankle sprain."

Dr. Dole, in his final report of January 10, 2007, reiterated that Mr. Campbell "still needs to have an MRI done of his right shoulder, as recommended by Dr. David DeLapp." Dr. Dole maintained his opinion that Mr. Campbell was not at MMI. Dr. Dole explained that the original impairment rating which he had given Mr. Campbell in March of 2006 did not take into consideration his right ankle and right shoulder complaints. According to Dr. Dole, "[the impairment rating] would be higher because of his loss of range of motion, but [he] would not be able to do a disability rating until he was at maximum medical improvement for his shoulder, and he [was] not at MMI . . . ."

5

At the request of the City, and pursuant to court authorization and appointment, Mr. Campbell saw Dr. Frazer Gaar on November 13, 2006 for an independent medical evaluation (IME). In his evaluation, Dr. Gaar noted Mr. Campbell's left ankle sprain, but did not see a need for surgical intervention. Dr. Gaar estimated a six percent whole person impairment rating and felt that Mr. Campbell could return to work with limitations as described in the FCE. He also felt that Mr. Campbell would need ongoing pain management. Dr. Gaar stated that he fully agreed with Dr. Mead's findings and recommendations.

Mr. Campbell filed a disputed claim for compensation (1008) on June 20, 2006, setting forth several issues in dispute. The issues which remained at trial included the City's: (1) termination of temporary total disability benefits (TTD); (2) untimely payment of the "week of waiting;" (3) failure to authorize an MRI of the right ankle and an MRI of the right shoulder; (4) failure to timely authorize chronic pain management; and (5) fraud defense pursuant to La.R.S. 23:1208 (1208 defense).

Following a trial on the merits, the workers' compensation judge (WCJ) ruled that Mr. Campbell was entitled to a reinstatement of TTD from August 20, 2006, the date of termination of said benefits. The WCJ also ruled that the City failed to timely pay Mr. Campbell for the first week of indemnity benefits and assessed a $2,000.00 penalty for the untimely payment of same. The WCJ found that Mr. Campbell's right ankle and right shoulder injury were causally related to the work-related accident of May 24, 2005 and that the City's failure to authorize the MRI of the right shoulder was arbitrary and capricious thereby warranting a penalty of $2,000.00. The City's failure to authorize the MRI of the right ankle was also found to be arbitrary and capricious, and a penalty of $2,000.00 was assessed therefor by the WCJ. It is from this judgment that the City appeals. Mr. Campbell has answered the appeal seeking

6

an additional attorney fee award for the work necessitated by the present appeal.

## ISSUES

The City presents the following issues for our review:

1. [w]hether the Trial Court erred by imposing two separate $2,000.00 penalties for the failure to authorize *one* demand for *two* MRIs[;]

2. [w]hether the Trial Court erred by holding that Appellant's decision to terminate plaintiff's indemnity benefits was arbitrary and capricious, given that Appellant was armed with the favorable opinions of one of plaintiff's treating physicians and [a second medical opinion] physician at the time indemnity benefits were terminated[;]

3. [w]hether the Trial Court erred by holding that plaintiff proved by a preponderance of the evidence that he was entitled to [temporary total disability benefits] after August 21, 2006, where no testimony or evidence exists that plaintiff was physically incapable of performing work[;]

4. [w]hether the Trial Court erred by holding that the "week of waiting" was untimely paid, where he was paid his full paycheck during said time[; and]

5. [w]hether the Trial Court erred by holding that plaintiff did not forfeit his rights under [La.R.S. 23:1208], considering he failed to disclose to Appellant that he sustained the same injury to his ankle only nine months prior to this incident.

## LAW AND DISCUSSION

### *Failure to authorize MRIs*

The City asserts that the WCJ erred in imposing a penalty for its failure to authorize the MRI on Mr. Campbell's right ankle and an additional penalty for its failure to authorize the MRI on his right shoulder. The City contends that only one demand was made for the two MRIs; accordingly, it concludes that only one penalty can result therefrom.[2] We disagree.

---

[2]We note that demand for the MRIs was made on more than one occasion. Likewise, authorization was denied on more than one occasion. The issue, however, is not whether penalties are warranted for each time the demand was made; rather, the issue is whether demand for the MRI of Mr. Campbell's right shoulder and demand for the MRI of Mr. Campbell's right ankle constitute one demand.

7

Louisiana Revised Statutes 23:1201 sets forth an employer's obligation relative to the payment of medical benefits. Pursuant to La.R.S. 23:1201(E), an employer is required to pay medical benefits "within sixty days after the employer or insurer receives written notice thereof." The statute further provides for the imposition of penalties for an employer's failure to comply with the statutory requirement. Louisiana Revised Statutes 23:1201(F) provides that an employer's "[f]ailure to provide payment . . . shall result in the assessment of a penalty . . . not to exceed a maximum of two thousand dollars in the aggregate for any claim." Thus, the statute expressly provides for the imposition of multiple penalties for multiple statutory violations.

In the instant case, Dr. DeLapp's May 16, 2006 office note indicates that he wanted to obtain an MRI on Mr. Campbell's right ankle and right shoulder. On May 25, 2006, demand was made on the City to authorize same. The City denied the request for both the MRI on the right ankle and the right shoulder on August 24, 2006, and it continued to withhold authorization for both MRIs through the date of trial.

The City argues that "the standard governing whether the [WCJ] herein erred in awarding multiple penalties for the denial of a single demand for two MRIs is whether the denial was a 'single violation.'" *Fontenot v. Reddell Vidrine Water Dist.*, 02-439, 02-442, 02-478, p. 27, n.12 (La. 1/14/03), 836 So.2d 14, 27 (quoting *Haynes v. Williams*, 01-26, p. 26 (La.App. 3 Cir. 7/25/01), 805 So.2d 215, 232). The City notes that "Dr. DeLapp's recommendation for both MRIs occurred on the same day, was noted on a single office note, and were mentioned in the same sentence." The City further points out that both the demand for and the denial of the MRIs were done each in a single correspondence. It concludes, therefore, that there was only a single

8

demand constituting a "single violation."

Louisiana Revised Statutes 23:1201(F) provides for the imposition of multiple penalties for multiple violations. Thus, the question which we are called upon to decide is whether there has been one or more violations of La.R.S. 23:1201. The failure of an employer to authorize or pay for medical treatment is a "failure to provide benefits" which subjects an employer to penalties. *Authement v. Shappert Eng'g*, 02-1631 (La. 2/25/03), 840 So.2d 1181. In this case, the City failed to authorize a diagnostic test of two different areas of Mr. Campbell's body, both of which had been requested by Dr. DeLapp. Neither the fact that the requests were made simultaneously nor the fact that the demands were made simultaneously makes the denial of the two MRIs on two separate parts of the body a "single violation." There is no medical evidence in the record to suggest that one MRI could be done which would cover both the shoulder and the ankle. Therefore, it would take two separate MRIs to cover two separate parts of the body; consequently, the City's failure to authorize same constitutes two separate violations. As poignantly argued by Mr. Campbell, if this were true, any time requests for more than one medical procedure were combined in a single request or a single demand, a "claimant would then be limited to only one penalty as denial of all of the different medical procedures would be a 'single violation.'" Based upon the facts of this case, we conclude that the WCJ was not manifestly erroneous in imposing two separate $2,000.00 penalties for the City's failure to authorize two separate and distinct MRIs.

### Termination of TTD

The City asserts herein that the trial court erred in ruling that its decision to terminate Mr. Campbell's TTD was arbitrary and capricious. The City contends that it was not arbitrary and capricious since, "*at the time that TTD benefits were*

9

*terminated*, both Dr. Dole and Dr. Mead were of the opinion that [Mr. Campbell] was capable of returning to work." We disagree.

Louisiana Revised Statutes 23:1201(I) sets forth the penalty provision for an employer's arbitrary and capricious termination of indemnity benefits providing, in pertinent part, as follows:

> Any employer or insurer who at any time discontinues payment of claims due and arising under this Chapter, when such discontinuance is found to be arbitrary, capricious, or without probable cause, shall be subject to the payment of a penalty not to exceed eight thousand dollars and a reasonable attorney fee for the prosecution and collection of such claims.

"Arbitrary and capricious behavior consists of willful and unreasoning action, without consideration and regard for facts and circumstances presented, or of seemingly unfounded motivation." *Brown v. Texas-LaCartage, Inc.*, 98-1063, pp. 8-9 (La. 12/1/98), 721 So.2d 885, 890.

Initially the City relied on Dr. Dole's opinion regarding Mr. Campbell's ability to return to work as grounds for its termination of benefits on August 20, 2006. The City obtained the opinion of Dr. Dole regarding Mr. Campbell's ability to return to work prior to the termination of benefits, but it did not obtain the approval of Dr. DeLapp prior to termination of same. This is true despite Dr. DeLapp's report of July 27, 2006 wherein he stated that, in his opinion, Mr. Campbell was not able to return and that he was not at MMI. Thus, in making its decision regarding the termination of benefits, the City did so without consulting with Mr. Campbell's treating orthopaedic physician who had not found him to be at MMI and who had not released him to return to work. The City did not consult with Dr. DeLapp prior to the termination of benefits, nor did it heed Mr. Campbell's request that Dr. DeLapp be consulted by the vocational rehabilitation counselor.

Additionally, as discussed in detail above, after the completion of the FCE and

10

disability rating, Dr. DeLapp released Mr. Campbell to return to work. However, with the development of new complaints of right ankle and right shoulder pain, Dr. DeLapp rescinded that opinion. Dr. DeLapp was obviously concerned about the new complaints which prompted the request for the MRIs. In Dr. DeLapp's opinion, the MRIs were necessary for him to properly evaluate Mr. Campbell's medical condition, and he was unwilling to release Mr. Campbell to return to work absent the diagnostic tests which were never approved by the City. Moreover, we note that when Dr. DeLapp was presented with the gas attendant job for approval on September 26, 2006, he rejected same.

Similarly, although Dr. Dole was initially of the opinion that Mr. Campbell had reached MMI and was capable of returning to light duty work as indicated by the FCE, he subsequently changed his opinion regarding MMI status and Mr. Campbell's ability to return to work. After discussing Mr. Campbell's medical condition with Dr. DeLapp in detail and obtaining a "full picture" of his current complaints, Dr. Dole rescinded his earlier opinion and agreed with Dr. DeLapp that Mr. Campbell could not return to work even in a sedentary position. He was also in agreement with Dr. DeLapp as to the necessity of the MRIs. Thus, even accepting the City's assertion that it reasonably relied upon the opinions of Dr. Dole and Dr. Mead at the time benefits were terminated, thereafter, the City continued to deny Mr. Campbell TTD even after Dr. Dole rescinded his opinion. Thus, despite the opinions of Dr. Dole and Dr. DeLapp that Mr. Campbell was not at MMI and that he was unable to return to work, the City never did resume Mr. Campbell's TTD.

Although we recognize that Dr. Mead and Dr. Gaar had differing opinions, even these physicians recognized the medical condition of Mr. Campbell relative to his right ankle and right shoulder complaints. Notably, Dr. Gaar's opinion regarding

11

Mr. Campbell's return to work status was not given until after TTD had already been terminated by the City. Based on the foregoing, we find no manifest error in the WCJ's determination that the termination of benefits was arbitrary and capricious and that a penalty is warranted therefor. We do, however, find the $8,000.00 penalty, which is the maximum allowed under the statute, to be an abuse of discretion and unwarranted. Considering the differing opinions in this case, we reduce the $8,000.00 penalty assessed by the WCJ for the City's arbitrary and capricious termination of TTD to $5,000.00.

### *TTD after August 21, 2006*

The City also asserts that Mr. Campbell failed to prove that he was entitled to TTD after August 21, 2006. We find this contention to be without merit.

In order to be entitled to TTD, Mr. Campbell had the burden of proving by clear and convincing evidence that he was unable to engage in any employment as a result of his work-related injury. La.R.S. 23:1221(1)(c). Contrary to the assertions of the City, the record supports the finding that Mr. Campbell continued to be unable to work after August 21, 2006.

Dr. DeLapp consistently maintained this position since the development of the right ankle and right shoulder complaints and his requests for the MRIs. He explained that the MRIs were needed so that a proper evaluation and treatment of the right ankle and the right shoulder could be done. Dr. DeLapp rejected the sedentary position presented for his approval and has continually refused to release Mr. Campbell to return to work. As of November of 2006, Dr. DeLapp reported that Mr. Campbell would "continue to remain temporarily totally disabled until [he] had the . . . questions answered." Given the City's continued refusal to approve the MRIs, Dr. DeLapp's opinion was that Mr. Campbell is unable to engage in any employment

as a result of his work-related injury.

Dr. Dole's opinion was also that Mr. Campbell was not able to return to work. His report of October 31, 2006 set forth, in no uncertain terms, the necessity for the MRIs, without which he would not consider "return to work discussions." On more than one occasion, Dr. Dole explained his position and strongly urged the City to approve the MRIs as requested. Since the City never authorized the MRIs, Dr. Dole refused to release Mr. Campbell to return to work.

Additionally, any continued reliance by the City on the FCE of January 2007 is unwarranted. In Dr. Dole's opinion, Mr. Campbell's abilities were "over-stated" in the FCE. Moreover, Dr. Dole explained that Mr. Campbell subsequently developed right ankle and right shoulder pain which had not yet arisen when the FCE was performed; thus, these medical problems were not even taken into account when the first FCE was performed. According to Dr. Dole, that FCE is no longer applicable.

While we are cognizant of the opinions of Dr. Mead and Dr. Gaar, we cannot say that the finding of the WCJ was manifestly erroneous. Specifically, we note that Dr. Mead admitted that "Mr. Campbell may very well have a rotator cuff tear of his right shoulder." Consistent therewith, Dr. Gaar noted that his examination of Mr. Campbell was consistent with a rotator cuff injury. Moreover, each physician agreed that an MRI was the diagnostic test needed to make such a determination. Clearly, the WCJ was justified in giving more weight to the opinions of the treating physicians, Dr. Dole and Dr. DeLapp, in making his determination. *Spell v. Conn Appliances, Inc.,* 97-309 (La.App. 3 Cir. 10/8/97), 702 So.2d 797.

### Louisiana Revised Statutes 23:1224 - "*Week of waiting*"

The City asserts that the WCJ erred in holding that its indemnity payment to

Mr. Campbell for the first "week of waiting" was untimely since he was paid his full paycheck during said time. Alternatively, the City argues that La.R.S. 23:1224 sets forth no deadline for the payment to be made. We disagree.

Louisiana Revised Statutes 23:1224 provides that "[n]o compensation shall be paid for the first week after the injury is received; provided, that in cases where disability from injury continues for six weeks or longer after date of the accident, compensation for the first week shall be paid after the first six weeks have elapsed." The failure of an employer to timely pay this indemnity benefit subjects the employer to a penalty under La.R.S. 23:1201(F).

Mr. Campbell sustained a work-related injury on May 24, 2005. Therefore, the week of waiting was from May 25, 2005 through May 31, 2005. Although it is undisputed that Mr. Campbell was not paid the indemnity benefit until August 17, 2005, the City asserts that the payment made to Mr. Campbell on June 3, 2005 was timely and was "in an amount more than he was entitled to."

The record establishes that Mr. Campbell was paid for the ten hours that he actually worked during that time period. The City also paid Mr. Campbell for "sick time" so that this paycheck totaled a full eighty hours and was the same as any other biweekly paycheck that Mr. Campbell received. However, the record also reveals that Mr. Campbell did not ask for his sick time to be paid to him. Mr. Campbell had accumulated his sick time prior to the work-related accident, and he was entitled to the use of same when *he* deemed it necessary to do so. There is no legal authority for the City to arbitrarily substitute Mr. Campbell's sick time for its legal obligation to timely pay Mr. Campbell's workers' compensation benefits. We, therefore, find that the June 3, 2005 payment made by the City to Mr. Campbell (out of his accumulated sick time) did not constitute a timely payment by the City of the week of waiting

14

compensation benefit pursuant to La.R.S. 23:1224.

The City argues on appeal that La.R.S. 23:1224 contains "no provision that mandates that the week of waiting be paid immediately *upon* the expiration of the six week period - the only requirement is that it be paid 'after.'" The City concludes, therefore, that the payment made to Mr. Campbell on August 17, 2005 was in compliance with the statute. We find this contention to be without merit.

As noted by the second circuit, "[t]here is little authority interpreting this statute." *Cloud v. Ringgold Nurse Care Ctr.*, 34,856, p. 13 (La.App. 2 Cir. 6/20/01), 792 So.2d 812, 819, *writ denied*, 01-2125 (La. 11/2/01), 800 So.2d 878. However, the supreme court has "deemed [a] three-week delay unreasonable without further discussion." *Id.* (citing *Brown,* 721 So.2d 885).

As noted above, the week of waiting in this case was from May 25, 2005 through May 31, 2005. Six weeks thereafter would have been July 5, 2005. It was undisputed that the City did not issue Mr. Campbell's indemnity benefit for the waiting period until August 17, 2005, approximately twelve weeks after the work-related accident. We find no error in the WCJ's ruling that such a delay is unreasonable. Accordingly, we affirm the imposition of a $2,000.00 penalty for the City's untimely payment of the indemnity benefit required by La.R.S. 23:1224.

### Forfeiture of benefits under La.R.S. 23:1208

The City also asserts on appeal that the WCJ erred in failing to find that Mr. Campbell had forfeited his rights under La.R.S. 23:1208.[3] We disagree.

---

[3]Although the City cites La.R.S. 23:1208 in its assignment of error, its brief also refers to La.R.S. 23:1208.1 which provides, in pertinent part, as follows:

> Nothing in this Title shall prohibit an employer from inquiring about previous injuries, disabilities, or other medical conditions and the employee shall answer truthfully; failure to answer truthfully shall result in the employee's forfeiture of benefits under this Chapter, provided said failure to answer directly relates to the medical condition for which a claim for benefits is made or affects the employer's ability to receive reimbursement from the second injury fund.

Louisiana Revised Statutes 23:1208 governs the parameters for determining if a claimant has committed fraud for the purpose of obtaining workers' compensation benefits. The applicable sections of that statute read as follows:

> § 1208. Misrepresentations concerning benefit payments; penalty
>
> A. It shall be unlawful for any person, for the purpose of obtaining or defeating any benefit or payment under the provisions of this Chapter, either for himself or for any other person, to willfully make a false statement or representation.
>
> . . . .
>
> E. Any employee violating this Section shall, upon determination by workers' compensation judge, forfeit any right to compensation benefits under this Chapter.

La.R.S. 23:1208.

> Under the unambiguous and clear language of the statute, an employer claiming that an employee has violated La.R.S. 23:1208 must prove "that (1) there is a false statement or representation, (2) it is willfully made, and (3) it is made for the purpose of obtaining or defeating any benefit or payment." *Resweber v. Haroil Constr. Co.*, 94-2708, p. 7 (La. 9/5/95), 660 So.2d 7, 12. If the WCJ finds that all three of "these requirements are met, Section 1208 applies and its forfeiture provisions must be enforced." *Id.* at 14.

*Jim Walter Homes, Inc. v. Guilbeau*, 05-1473, p. 5 (La.App. 3 Cir. 6/21/06), 934 So.2d 239, 243.

In brief, the City notes that Mr. Campbell completed an Identification and Pre-Employment Questionnaire indicating that he had no prior injuries; however, he had sustained an ankle injury on January 8, 2004, when he stepped in a pothole while delivering pizza. The City concludes that Mr. Campbell's failure to disclose his prior injury should have resulted in a forfeiture of his benefits pursuant to La.R.S. 23:1208.

On the issue of Mr. Campbell's forfeiture of benefits, the WCJ stated:

In the evidence presented at trial, I never saw any information that would lead the Court to believe that the employer was making a [La.R.S.] 23:1208 claim. The arguments presented by the employer in

16

[b]rief really addressed only a situation of failure to give appropriate information on a Post-hire Medical Questionnaire which is a [La.R.S.] 23:1208.1 [defense], but if, in fact, [La.R.S.] 23:1208 were asserted, it would be denied as well. The only thing I can assume would be the basis of the [La.R.S.] 23:1208 [defense] is that when Mr. Campbell saw any of his physicians, he failed to disclose these past medical conditions.

It has been previously noted that the medical conditions of the past don't show any significant injury that Mr. Campbell had sustained on any of those incidents involved. Moreover, Mr. Campbell is not required to recite with mathematical precision his past medical history.

Mr. Campbell explained that he failed to indicate that an accident had occurred while he was delivering pizza since he had fully recovered from same. He interpreted the information sought relative to an "injury" as something that was continuing to cause him medical problems. In light of his full recovery, he did not include this incident when completing the form. Based upon the record, we find no manifest error in the finding of the WCJ that the City failed to establish the requisite elements of a 1208 defense. Accordingly, the judgment of the WCJ rejecting the City's fraud defense pursuant to La.R.S. 1208 is affirmed.

### *Answer to Appeal*

An answer to appeal was filed by Mr. Campbell wherein he sought an increase in the attorney fee award as a result of the work necessitated by the City's appeal. Accordingly, we award an additional $2,500.00 in attorney fees for the work necessitated by the present appeal.

### DECREE

For the foregoing reasons, the judgment of the WCJ is affirmed except for the $8,000.00 penalty assessed against the City for its arbitrary and capricious termination of TTD benefits which is reduced to $5,000.00. Additionally, judgment is rendered in favor of Shannon Campbell in the amount of $2,500.00 in additional attorney fees for the work necessitated by the present appeal.

17

Costs of this appeal are assessed against the City of Leesville.

**AFFIRMED AS AMENDED AND RENDERED.**