# STATE OF LOUISIANA
## COURT OF APPEAL, THIRD CIRCUIT

### 09-1049

AGILUS HEALTH (ALLISON TAYLOR)

VERSUS

ACCOR LODGING NORTH AMERICA

*********

APPEAL FROM THE
OFFICE OF WORKER'S COMPENSATION, DISTRICT 02
PARISH OF RAPIDES, 08-05824
HONORABLE JAMES L. BRADDOCK,
WORKER'S COMPENSATION JUDGE

*********

## J. DAVID PAINTER
### JUDGE

*********

Court composed of John D. Saunders, Marc T. Amy, and J. David Painter, Judges.
**AMY, J., DISSENTS AND ASSIGNS WRITTEN REASONS.**

**AFFIRMED.**

Michael E. Parker
P.O. Box 81129
Lafayette, LA 70598
Counsel for Defendants-Appellants:
    Accor Lodging North America
    Libery Mutual Insurance Company

R. Bray Williams
Joseph Payne Williams, Sr.
P.O. Box 15
Natchitoches, LA 71458
Counsel for Plaintiff-Appellee:
    Agilus Health, Inc.

Thomas A. Filo
Michael K. Cox
723 Broad St.
Lake Charles, LA 70601
Counsel for Plaintiff-Appellee:
    Agilus Health, Inc.

**PAINTER, Judge.**

Defendants, Accor Lodging North America (Accor) and its worker's compensation insurer, Liberty Mutual Insurance Company (Liberty Mutual), appeal the judgment of the Workers' Compensation Judge (WCJ) in favor of Plaintiff health care provider, Agilus Health, Inc. (Agilus), for underpayment of medical benefits, statutory penalties, and attorney's fees. Finding that the underpayment violated the Workers' Compensation Act, we affirm.

## FACTS

Allison Taylor was injured in the course and scope of her employment with Accor. At some point in her treatment, she was referred to Agilus for treatment. When Agilus submitted its bills for treatment of Taylor, the payment amounts were discounted below the amounts provided by the Louisiana Workers' Compensation Reimbursement Schedule. The discounts were taken pursuant to a Participating Clinic Agreement (PPO agreement) that Agilus entered with First Health Network (First Health), a group purchaser, who in turned contracted with Liberty Mutual for discounted health insurance payments for its members. Agilus filed a disputed claim for compensation asserting underpayment of its bill by Accor. After a hearing, the WCJ found in favor of Agilus. Accor and Liberty Mutual appeal. Agilus answered the appeal asking for additional attorney's fees on appeal.

## DISCUSSION

*Validity of the PPO Discount*

Accor and Liberty Mutual first assert that the trial court erred in that it nullified the contracts between Agilus and First Health and between First Health and Liberty Mutual. Our review of the record reveals no such action by the trial court. The trial court found that the contracts entered into by the parties did not apply to workers'

compensation payments, pursuant to the Worker's Compensation statute. Further, this court does not purport to consider the validity of any contract concerning non-parties to this suit.

Accor and Liberty Mutual argue in brief that the PPO agreement is not in violation of the Workers' Compensation Act and the reimbursement schedule because La.R.S. 23:1034.2(E) allows a provider to charge a fee that is less than that established by the reimbursement schedule. Accor and Liberty Mutual, however, ignore the fact that this provision does not allow the employer to pay less than the scheduled amount if the provider charges that amount or more.

La.R.S. 23:1203(B) states that:

> The obligation of the employer to furnish such care, services, treatment, drugs, and supplies, whether in state or out of state, is limited to the reimbursement determined to be the mean of the usual and customary charges for such care, services, treatment, drugs, and supplies, as determined under the reimbursement schedule annually published pursuant to R.S. 23:1034.2 or the actual charge made for the service, whichever is less. Any out-of-state provider is also to be subject to the procedures established under the office of workers' compensation administration utilization review rules.

Louisiana Revised Statutes 23:1033 provides that: "No contract, rule, regulation or device whatsoever shall operate to relieve the employer, in whole or in part, from any liability created by this Chapter except as herein provided."

As Judge Peter's stated in his concurring opinion to this court's *en banc* opinion in *Beutler England Chiropractic Clinic v. Mermentau Rice, Inc.*, 05-942 (La.App. 3 Cir. 5/31/06), 931 So.2d 553, 561 (citing his dissenting opinion in *Beutler England Clinic v. Market Basket No. 27*, 05-952 (La.App. 3 Cir. 12/30/05), 919 So.2d 816, 821):

> [T]o the extent that the PPO contract purports to further limit the employer's liability for medical care, it runs afoul of La.R.S. 23:1033 and may not serve as a basis to reduce the amount owed to Beutler England for the treatment of [the injured employee].

Accordingly, we find no error in the trial court's determination that Accor and Liberty Mutual must pay the difference between the amount provided by the reimbursement schedule and the amount it previously paid for the service rendered to Allison Taylor.

*Penalties and Attorney's Fees*

The WCJ ordered that Defendants pay $2,000.00 in statutory penalties for underpayment of the bill and $4,000.00 in attorney's fees. Defendants now assert that the trial court erred in awarding penalties for the underpayment of the bill and in awarding attorney's fees.

La.R.S. 23:1201(F)(4) provides that: "In the event that the health care provider prevails on a claim for payment of his fee, penalties as provided in this Section and reasonable attorney fees based upon actual hours worked may be awarded and paid directly to the health care provider." Defendants assert that pursuant to La.R.S. 23:1201(F)(2), because the claim was reasonably controverted, penalties and attorney's fees are not appropriate. It is true as Defendant argues that "an employer should not be penalized for seeking judicial resolution of close factual issues." *Spell v. Conn Appliances, Inc.*, 97-309, p. 11 (La.App. 3 Cir. 10/8/97), 702 So.2d 797, 802. Defendants further argue that the claim was reasonably controverted. However, we can find neither a close factual issue nor that the claim was reasonably controverted. Rather, we find a violation of a statutorily mandated payment schedule. Therefore, the WCJ appropriately awarded both penalties and attorney's fees.

*Answer to Appeal*

Agilus answers Defendants' appeal seeking additional attorney's fees for work done on this appeal. After a review of the record and noting the work done on appeal by counsel for Agilus, we find that an additional award of $2,500.00 in attorney's fees

is reasonable.  We, therefore, award Agilus an additional $2,500.00 in attorney's fees for successfully defending this appeal.

## CONCLUSION

For these reasons, the judgment of the trial court is affirmed.  Defendants are ordered to pay an additional $2,500.00 in attorney's fees for work done on appeal as well as all costs of appeal.

**AFFIRMED.**

NUMBER 09-1049

COURT OF APPEAL, THIRD CIRCUIT

STATE OF LOUISIANA

AGILUS HEALTH (Allison Taylor)

VERSUS

ACCOR LODGING NORTH AMERICA


AMY, J., dissents and assigns reasons.

I respectfully dissent from the majority decision as I find that a reversal is required. In my opinion, the claimant in this case confuses an employer's liability to the employee and an employer's liability to the health are provider.

Louisiana Revised Statutes 23:1033 provides that:

> No contract, rule, regulation or device whatsoever shall operate to relieve the employer, in whole or in part, from any *liability* created by this Chapter *except as herein provided.*

(Emphasis added.) In my opinion, there is no question that the employer, through its contractual agreement, has satisfied its liability to the employee for the pertinent medical treatment. Service was rendered and paid for at the contractually agreed upon fee. As set forth below, the First Health Network contract requires the health care provider to "accept the reimbursement amounts specified" in Appendix A of the agreement "*as payment in full* for Covered Medical Services rendered to Participating Patients." Appendix A, also excerpted below, includes the reduced fee schedule agreed upon in workers' compensation cases.

Neither do I find that the employee is somehow obligated to pay the difference between the fee charged and the scheduled reimbursement amount, as the agreement provides that the participating patient, here the employee, would only be liable and billed for services not covered by the pertinent plan and for copayments and/or deductibles. There has been no contention that this workers' compensation matter

would have generated a copayment or deductible.

Additionally, La.R.S. 23:1033 prohibits a limitation on liability "except as herein provided[.]" La.R.S. 23:1034.2 provides that:

> E.  Nothing in this Section shall prevent a health care provider from charging a fee for such care, services, treatment, drugs, or supplies that is less than the reimbursement established by the reimbursement schedule.

The First Health contract is, in fact, an agreement requiring the health care provider (Agilus) to accept a fee less than that established by the reimbursement schedule and, I believe, is the type of arrangement specified by La.R.S. 23:1034.2.

The record in this case includes The First Health Network Participating Clinic Agreement.  The agreement clearly anticipates the inclusion of workers' compensation services among the type of plans covered.  Article 1, Paragraph 1.4 provides that the "Agreement sets forth the understanding, rights and obligations of the parties for the purpose of providing preferred reimbursement rates for medical services for persons covered *under various Payor plans.*"  (Emphasis added.)

Article 2 sets forth the following definitions, relevant to the health care provider's understanding of its application to workers' compensation:

> **2.2  Covered Medical Services**
>
> **"Covered Medical Services"** means those services provided to a Participating Patient for which the Payor is obligated to pay pursuant to the Payor's Health Benefit Plan or Health Insurance Plan.
>
> **2.3  Health Plan**
>
> **"Health Plan"** means any contract, certificate, policy, plan document or other legally enforceable instrument and amendments thereto issued, sponsored, or administered by a Payor under which a Participating Patient may be entitled to health services or health service benefits. These Health Plans may include, but are not limited to, indemnity plans, health maintenance organizations, insurance group health plans, and *workers' compensation plans*.
>
> . . . .

2

**2.7    Payor**

**"Payor"** means an employer, trust fund, insurance carrier, health care service plan, trust, nonprofit hospital service plan, a governmental unit, any other entity which has an obligation to provide medical services or benefits for such services to Participating Patients, or any other entity which has contracted with First Health to use First Health's Preferred Provider Panel.

**2.8    Payor Agreement (or PPO Agreement)**

**"Payor Agreement"** or **"PPO Agreement"** is an instrument between a Payor and First Health or its authorized representative which provides for Participating Providers to render health care services pursuant to this Agreement to Participating Patients at the reimbursement amounts set forth herein.

Article 4, pertaining to Payment Provisions, also contains specific workers' compensation provisions and states:

**4.2    Reimbursement Procedure**

The rules and procedures for reimbursement under this Agreement are as follows:

a)    Pursuant to each Payor's Payor Agreement with First Health, Payor shall be liable for the lesser of Provider's billed charges or the amount set forth in Appendix A of this Agreement, less amounts of any copayments, deductibles, and coordination of benefits, when Covered Medical Services are provided to a Participating Patient.

b)    In no case shall reimbursement exceed Provider's billed charges.

c)    If assignment has been made to Provider.  Payor shall make payment directly to Provider.

d)    Payment shall be made within thirty (30) calendar days of Payor's receipt of an accurate and complete bill submitted by Provider in accordance with Paragraph 4.1, above.

e)    *For Workers' Compensation Payors, reimbursement under this Agreement shall not exceed the amount allowed for Provider's services under Workers' Compensation laws and regulations.*

f)    If Provider practices in multiple locations which are subject to different rates of reimbursement under the terms of separate Agreements with First Health using the same FTIN, the lowest of the different rates of reimbursement shall apply.

(Emphasis added.) Specifically pertinent to this case, Article 4 also provides:

**4.3     Payment in Full**

Provider agrees to accept the reimbursement amounts specified in Appendix A as payment in full for Covered Medical Services rendered to Participating Patients. In no case shall reimbursement exceed Provider's billed charges. Provider further agrees that when Covered Medical Services are provided to a Participating Patient, the Participating Patient shall be liable only for actual copayments and/or deductibles as determined by the Payor in accordance with the Payor's Health Plan.

**4.4     Liability of Participating Patient**

Provider agrees that the only charges for which a Participating Patient may be liable and be billed by Provider shall be for services not covered by the Payor's Health Plan and for copayments and deductible amounts required by the Payor's Health Plan. Provider agrees to accept assignment on all claims submitted by or on behalf of Participating Patients.

(Emphasis added.) Appendix A, referenced in Article 4, Paragraph 4.3 sets forth reimbursement schedules and provides as follows with regard to workers' compensation:

D.     Reimbursement from Workers' Compensation Payors for services rendered to occupationally ill/injured employees shall be as follows:

(1)     If any state law or regulation establishes rules or guidelines for the payment of health care services, reimbursement shall not exceed 85% of the maximum amount payable under such rules or guidelines. Any procedure code which is unvalued shall be reimbursed pursuant to Section A, Paragraph (3), of this Appendix. This rate of reimbursement shall apply whether such rules or guidelines are in existence at the time of execution of this agreement or established at a later time.

(2)     In the absence of any state law or regulation set forth in Section D, Paragraph (1), reimbursement shall be the method set forth in Section A, Paragraphs (1), (2) and (3) of this Appendix, but in no event shall reimbursement exceed the usual and customary charge for the services as determined by First Health or Payor.

According to the testimony of the President of Agilus, the health care provider was aware of the contract's provision indicating that workers' compensation would

4

be paid at a reduced amount. He explained as follows when questioned by the workers' compensation judge:

> Q      Why did you agree to sign a PPO contract with workers' compensation? Why did Agilus Health or the physical therapy company do that?
>
> A      I think in general we sign these PPO agreements to get their health insurance business and for them to direct more volume to us pretty much with the understanding that - -
>
> Q      They don't say in that contract because I read it - -
>
> A      It does say in that contract. We pretty much - -
>
> Q      Workers' compensation?
>
> A      Correct. We pretty much always were under the understanding that no matter what you signed with those guys you were going to get paid the fee schedule, that this was - -
>
> Q      It says it in that contract. Didn't somebody read that contract? Because it says plainly in there that you're not going to get paid the fee schedule.
>
> A      Right. I understand.
>
> Q      So, why are you telling me you assume that?
>
> A      Because we always - - we had signed these PPO contracts historically and we were always paid the fee schedule regardless of what contract that we signed with the PPO network.
>
> Q      So you're saying you just didn't pay any attention to the language in the instrument that someone from the physical therapy place affixed his signature to?
>
> A      No. We paid attention to the contract and we signed the contract, but historically the discount - -
>
> Q      Well, I'm not talking about historically. I'm talking about this contract - -
>
> A      Yes, sir.
>
> Q      - - at issue today which specifically says that the clinic, Physical Therapy Services, is agreeing some kind of way to take an amount less than the fee schedule.

A       Right.  Correct.  And generally, in exchange for doing that we expected steerage and we expected the companies to send us more patients.

Q       Did the contract say anything about a steerage with regard to workers' compensation or injured workers?

A       That's the reason why you sign.  That's the reason why healthcare providers sign PPO contracts is to give discounts in exchange for more patients.

Clearly, the health care provider knew of the contents of the contract, but contested it when the insurer abided by its terms with regard to workers' compensation payments.

For these reasons, I find that La.R.S. 23:1034.2(E) permits the type of agreement entered into by Agilus and that the workers' compensation judge's determination should be reversed.

6