790 So.2d 660 (2001)
Elizabeth C. DUFRENE
v.
INSURANCE COMPANY OF The STATE OF PENNSYLVANIA, 155 Brookhollow Associates, United Parcel Service, Inc., and Liberty Mutual Insurance Company.
No. 01-CA-47.
Court of Appeal of Louisiana, Fifth Circuit.
May 30, 2001.
*662 Kevin T. Phayer, Metairie, David M. Bienvenu, Jr., Baton Rouge, for Defendants/Appellants, 155 Brookhollow Associates, United Parcel Service, Inc., and Insurance Company of the State of Pennsylvania.
James B. Guest, Lisa I. Guest, Kenner, for Plaintiff/Appellee, Elizabeth C. Dufrene.
Kenny M. Charbonnet, New Orleans, for Intervenor, United Parcel Service, Inc. and Liberty Mutual Insurance Company.
Panel composed of SOL GOTHARD, SUSAN M. CHEHARDY and WALTER J. ROTHSCHILD.
CHEHARDY, Judge.
In this personal injury lawsuit, after trial, the jury found that both the property owner and the lessee-employer were negligent, and also found that the plaintiff was not negligent, but failed to award any damages. The trial court thereafter granted plaintiff's motion for judgment notwithstanding the verdict, assigned sixty percent liability to the property owner, forty percent liability to the lessee-employer, awarded damages, and ordered the workers' compensation insurer to be reimbursed, *663 subject to a forty percent reduction for the employer's fault. For the following reasons, we affirm in part, amend in part, reverse in part and render.

FACTS
In March of 1982, plaintiff, Elizabeth C. Dufrene, began working for defendant, United Parcel Service, Inc. (U.P.S.), as an administrative assistant. She worked in the business office located at 155 Brookhollow in Harahan, Louisiana. Sometime in 1988, the 155 Brookhollow office building was purchased by defendant, 155 Brookhollow Associates (Brookhollow). Brookhollow agreed to make certain renovations to the building and continue leasing it to U.P.S. to use as its business office. Part of the renovations included the mandatory installation of a handicapped-accessible ramp to the side door of the building, used primarily by U.P.S. employees who worked in the building. The ramp was constructed alongside the wall of the building and had a landing on the outside of the entrance.
Once the renovations were completed, and as part of their lease agreement, U.P.S. was responsible for the maintenance of the building. Within approximately one year after the renovations were completed, it became apparent that the handicap ramp, which was constructed out of steel, became slippery when it rained. U.P.S. attempted to remedy the problem with the use of skid-resistant paint. However, the paint failed to render the ramp skid-resistant. U.P.S. then applied a rubber conveyor belt to the ramp and to the landing outside of the entrance to the building, fastening the conveyor belt to the steel decking with the use of self-tapping screws.
Approximately one year after the conveyor belt was fastened to the ramp and landing, on September 28, 1990, plaintiff, Elizabeth C. Dufrene, exited the building via the landing and ramp on her morning break. As she stepped from the landing to the ramp, her heel became caught on the conveyor belt, causing her to trip and fall, sustaining injuries.

PROCEDURAL HISTORY
On September 25, 1991, plaintiff filed the instant lawsuit against Brookhollow and its insurer, Insurance Company of the State of Pennsylvania. Because the lease between Brookhollow and U.P.S. provided that U.P.S. assumed "responsibility for the condition, operation, repair, replacement, maintenance and management of the entire property," and because of U.P.S.'s involvement in fastening the conveyor belt to the ramp and landing, plaintiff later amended her petition to include both U.P.S. and U.P.S.'s liability insurer, Liberty Mutual Insurance Company, as defendants.
Brookhollow initially filed a cross-claim against U.P.S., asserting that pursuant to their lease, U.P.S. agreed to indemnify and hold Brookhollow "harmless of and from any and all claims, suits or demands, arising out of any accident, injury or damage to any person that may happen in or upon the leased premises," and also agreed to provide liability insurance therefor. Brookhollow and U.P.S. apparently satisfied the cross claim a few months later, when counsel for Brookhollow withdrew his representation and counsel for U.P.S. was enrolled as counsel for Brookhollow. Both defendants were represented by the same counsel throughout the remainder of these proceedings, including before us on appeal.
The matter proceeded to a jury trial on August 28-30, 2000. After the plaintiff rested, and outside of the presence of the jury, U.P.S. moved for a directed verdict, arguing for the first time in these proceedings that pursuant to La. R.S. 23:1032, *664 plaintiff's exclusive remedy against U.P.S., plaintiff's employer, was workers' compensation. At the conclusion of oral argument, the trial court denied U.P.S.'s directed verdict motion.
Once the case was submitted to the jury for deliberations, U.P.S. again moved for dismissal of the plaintiff's claims against it, this time filing a peremptory exception of no cause of action, again arguing that the exclusive remedy for the plaintiff against U.P.S. was workers' compensation. The trial court also orally denied the exception.
At the conclusion of their deliberations, the jury answered the jury interrogatories as follows:
1. WAS 155 BROOKHOLLOW ASSOCIATES NEGLIGENT? YES.

2. IF YES, WAS 155 BROOKHOLLOW'S NEGLIGENCE A PROXIMATE CAUSE OF ELIZABETH C. DUFRENE'S INJURIES? NO.

3. WAS 155 BROOKHOLLOW ASSOCIATES'S BUILDING DEFECTIVE? YES.

4. IF YES, WAS THE DEFECT IN 155 BROOKHOLLOW'S BUILDING A PROXIMATE CAUSE OF ELIZABETH C. DUFRENE'S INJURIES? NO.

5. WAS UNITED PARCEL SERVICE, INC. NEGLIGENT? YES.

6. IF YES, WAS UNITED PARCEL SERVICE, INC.'S NEGLIGENCE A PROXIMATE CAUSE OF ELIZABETH C. DUFRENE'S INJURIES? NO.

7. WAS ELIZABETH C. DUFRENE NEGLIGENT? NO.

While the jury found both Brookhollow and U.P.S. negligent, and found Brookhollow's building defective, the jury did not find that the defendants' negligence proximately caused Ms. Dufrene's injuries, even though it found her free from fault. Because the jury failed to find causation between defendants' negligence and plaintiffs injuries, it awarded no damages to the plaintiff.
Plaintiff thereafter filed a motion for judgment notwithstanding the verdict. After taking the matter under submission, on October 19, 2000, the trial court granted plaintiffs motion for judgment notwithstanding the verdict, finding in its judgment that
[t]he jury's verdict in finding liability of the defendants, with no negligence on the part of the plaintiff, but failing to find causation and damages in this case was unreasonable.... The only permissible view of the evidence is that the plaintiffs fall and resulting injuries were caused by the negligence of the defendants and the defect in the building.... The plaintiff is entitled to a JNOV for the reasonable damages which were established at trial.
As part of its judgment, the trial court assessed liability for Ms. Dufrene's injuries sixty percent to Brookhollow and forty percent to U.P.S. The trial court also awarded Ms. Dufrene $600,000.00 in general damages, past medical expenses of $172,780.80, future medical expenses of $193,544.50, past lost wages of $247,489.00, and future lost income of $244,091.00, subject to each defendant's liability. The trial court further ordered that the intervention of Liberty Mutual Insurance Company, as U.P.S.'s workers' compensation insurer, "is hereby recognized for all compensation and medical payment made up to and including the date of the trial, subject to a reduction for the degree of fault of United Parcel Service, Inc., which as stated above is Forty (40%) percent."
On November 2, 2000, counsel for Brookhollow and U.P.S. filed a petition for *665 suspensive appeal. Plaintiff timely filed an answer to the appeal.
In their appellate brief, defendants Brookhollow and U.P.S. have asserted four assignments of error: the trial court erred in rendering a judgment notwithstanding the verdict; the trial court erred in failing to grant U.P.S.'s peremptory exception of no cause of action; the trial court erred in allocating fault to Brookhollow; and the trial court erred in failing to allocate fault to the plaintiff.
In her appellate brief, plaintiff also asserts four assignments of error: the trial court erred in not finding Brookhollow and U.P.S. each 100% liable for plaintiff's injuries; the trial court erred in omitting Liberty Mutual Insurance Company (in its capacity as U.P.S.'s liability insurer) from the judgment; the trial court erred in granting a judgment in favor of Liberty Mutual Insurance Company (in its capacity as the worker's compensation insurer); and the trial court erred in failing to award plaintiff sufficient future damages.
In its separate appellate brief filed by separate counsel, intervenor, Liberty Mutual Insurance Company (in its capacity as the workers' compensation insurer), asserts one assignment of error: the trial court erred in reducing intervenor's right of recovery by 40% (the degree of U.P.S.'s fault).

ANALYSIS

DEFENDANTS' ASSIGNMENTS OF ERROR
With regards to the first assignment of error of defendants Brookhollow and U.P.S., La. C.C.P. art. 1811 governs judgments notwithstanding the verdict (JNOV). It provides that a motion for judgment notwithstanding the verdict may be granted on the issue of liability or on the issue of damages, or both. The standard to be used in determining whether a JNOV has been properly granted has been set forth in our jurisprudence as follows:
A JNOV is warranted when the facts and inferences point so strongly and overwhelmingly in favor of one party that the court believes that reasonable men could not arrive at a contrary verdict. The motion should be granted only when the evidence points so strongly in favor of the moving party that reasonable men could not reach different conclusions, not merely when there is a preponderance of evidence for the mover. If there is evidence opposed to the motion which is of such quality and weight that reasonable and fair-minded men in the exercise of impartial judgment might reach different conclusions, the motion should be denied. In making this determination, the court should not evaluate the credibility of the witnesses, and all reasonable inferences or factual questions should be resolved in favor of the non-moving party.
In reviewing a JNOV, the appellate court must first determine if the trial court erred in granting the JNOV. This is done by using the aforementioned criteria just as the trial judge does in deciding whether to grant the motion or not, i.e. do the facts and inferences point so strongly and overwhelmingly in favor of the moving party that reasonable men could not arrive at a contrary verdict? If the answer to that question is in the affirmative, then the trial judge was correct in granting the motion. If, however, reasonable men in the exercise of impartial judgment might reach a different conclusion, then it was error to grant the motion and the jury verdict should be reinstated.
Anderson v. New Orleans Public Service, 583 So.2d 829, 832 (La.1991), citing Scott v. Hospital Service District No. 1, 496 So.2d 270 (La.1986).
*666 In this matter, we have reviewed the entire record, including the three-day trial transcript. At trial, plaintiff presented the testimony of Bhola Dhume, who is the Chief Building Official for the City of New Orleans, and who was stipulated at trial to be an expert in the field of architecture. Mr. Dhume testified that after plaintiffs fall, he examined the ramp and landing, took measurements and photographs, made sketches, and consulted various safety codes, including the Jefferson Parish Building Code, the Life Safety Code, and the American National Standards Institute (ANSI) Code. It was Mr. Dhume's opinion that the ramp, as constructed by Brookhollow, and prior to the application of the conveyor belt by U.P.S., violated four areas of the safety codes, which rendered the ramp hazardous.
Mr. Dhume testified that all safety codes mandate that handrails be present on both sides of the ramp. In this application, Brookhollow failed to construct a handrail along the left side of the ramp (as viewed from the top of the ramp and closest to the building). Mr. Dhume also testified that pursuant to the codes, the openings between the supports of the handrails can be no wider than six inches. The openings on the one handrail of the ramp in question were approximately twenty inches wide. Mr. Dhume further testified that the steel decking of the ramp was not flush with the landing at the top of the ramp, nor with the ground at the bottom at the ramp. Mr. Dhume testified that this was a tripping hazard and a code violation. Finally, Mr. Dhume testified that the surface of the steel ramp and landing, while containing "some design indentations," was a code violation and a hazard in that it became slippery when it was wet.
With regards to U.P.S.'s attempt to remedy the slippery condition of the ramp, Mr. Dhume testified that the use of the conveyor belt was a code violation in that it became a tripping hazard over time. Mr. Dhume testified that at either end of the ramp, and at the ends of the landing, the conveyor belt was curling up, despite the existence of the screws nearby which were supposed to hold the belt down. Mr. Dhume's testimony was supported by the various photographs of the ramp and landing which were admitted at trial.
Ms. Dufrene also testified at trial. She testified that at the time of her accident, the conveyor belt was attached in two sections, one section was attached to the ramp and one section was attached to the landing. She testified that while the two sections were "butted up against each other," they were not "glued down or sewn down or stapled down," nor were they joined in any way.
With regards to her fall, Ms. Dufrene testified that as she stepped from the landing onto the ramp, the heel of her right shoe became caught on the conveyor belt and she tripped, falling to her left. Ms. Dufrene further testified that because there was no handrail to grab onto to her left, she tried to rotate her body to grab the right handrail, but was unable to catch herself. She wound up landing on her back, facing up the ramp.
While there were no other eyewitnesses to Ms. Dufrene's fall, her co-worker, Leslie Harvin, who was in the area but not facing Ms. Dufrene when she fell, confirmed that Ms. Dufrene had fallen, and went to Ms. Dufrene's aid when she saw her lying on the ramp.
In its case-in-chief, defendants Brookhollow and U.P.S. submitted the testimony of Allisen Launey, who was accepted by the trial court as an expert in civil engineering. While Mr. Launey opined that the existence of a handrail on the left side of the ramp would not have prevented plaintiff from tripping, he could not dispute *667 the various safety code violations of the ramp and landing as found by Mr. Dhume.
Throughout the trial, defendants Brookhollow and U.P.S. did not dispute the code violations of the ramp. Further, defendants did not dispute that Ms. Dufrene fell on the ramp on the date in question, nor that she suffered the physical and emotional injuries which she and her treating physicians testified about at trial.
Based on our review of the entire record herein, we find ample evidence to show that Brookhollow was negligent in the construction of the ramp and that U.P.S. was negligent in applying the conveyor belt to the ramp. We further find ample evidence to show that the plaintiff did nothing to cause or contribute to her fall that day. These are the exact findings the jury made after seeing the witnesses testify and viewing all the evidence admitted at trial.
With regards to causation, there is no dispute that the various and substantial injuries which the trial testimony showed plaintiff suffered only came about as a result of her fall on the ramp. There was no testimony or evidence submitted that plaintiff suffered these injuries as a result of some other trauma, nor was there any testimony or evidence submitted that plaintiff was exaggerating her injuries in any way.
Having made the factually-supported and reasonable determinations that both defendants were negligent in the construction/maintenance of the ramp, and that Ms. Dufrene was not negligent, we find it legally impossible for any juror to then conclude that the defendants' negligence was not a proximate cause of the plaintiff's injuries. Defendants' conduct was the only negligent conduct in this case. Plaintiff's injuries were incurred as a direct result of defendants' negligent conduct. Reasonable jurors could not reach a different conclusion. Therefore, we find that the trial court correctly granted plaintiff's motion for judgment notwithstanding the verdict.
After determining that the trial court correctly applied its standard of review as to the jury verdict, the appellate court reviews the JNOV using the manifest error standard of review. Davis v. Wal-Mart Stores, Inc., 00-0445 (La.11/28/00), 774 So.2d 84, 89, citing Anderson, supra. Accordingly, the second part of our inquiry is whether the trial court was manifestly erroneous in its apportionment of fault between the defendants.
As noted above, the trial court found Brookhollow sixty percent liable in the construction of the ramp. Upon review, we find this entirely reasonable, considering, as the trial court did in its judgment, that Brookhollow, as the owner of the building where Ms. Dufrene fell, "had the original duty under the lease and building codes to build a safe and compliant handicap ramp." As noted by Mr. Dhume in his trial testimony, prior to any action by U.P.S., the ramp violated at least four safety codes. Had Brookhollow constructed the ramp to meet the minimum requirements of the safety codes, U.P.S. would not have had to attempt a remedy. Therefore, the trial court's assignment of sixty percent of the fault to Brookhollow was not manifestly erroneous.
The only other negligent party herein, U.P.S., was found by the trial court to be forty percent liable in its application of the conveyor belt to the ramp and landing. We also find this to be a reasonable determination. Some of the pictures admitted at trial show the ends of the rubber conveyor belt curling up, just as Mr. Dhume and Ms. Dufrene testified. Clearly, failing to properly secure the ends of the belt to *668 the deck and to each other where two ends of the belt met created a tripping hazard, which contributed to Ms. Dufrene's injuries. This finding was also not manifestly erroneous.
Accordingly, we find the first assignment of error by Brookhollow and U.P.S. to be without merit.
In the second assignment of error filed by Brookhollow and U.P.S., U.P.S. alone argues that the trial court should have granted its peremptory exception of no cause of action based on La. R.S. 23:1032, which makes an employer tortimmune from lawsuits brought by employees for work-related, non-intentional injuries. U.P.S. admits on appeal that its exception of no cause of action should have been brought as an exception of no right of action, and treated as such by the trial court. We agree.
La. C.C.P. art. 923 provides that "[t]he function of the peremptory exception is to have the plaintiff's action declared legally nonexistent, or barred by effect of law, and hence this exception tends to dismiss or defeat the action." The purpose of the exception of no right of action is to determine whether a plaintiff has a real and actual interest in an action or belongs to a particular class to which the law grants a remedy for a particular harm alleged. Wallace v. Nathan, 96-119 (La.App. 5 Cir.7/30/96), 678 So.2d 595. The exception of no right of action is directed to showing that a plaintiff has no legal right or interest in enforcing the matter asserted, based upon the facts and evidence submitted. La. C.C.P. art. 927; Dufour v. Westlawn Cemeteries, Inc., 94-81 (La.App. 5 Cir.6/28/94), 639 So.2d 843.
Upon review of the trial transcript, it appears that the trial court believed that U.P.S.'s tort immunity claim should have been plead as an affirmative defense prior to trial. While we likewise find it suspect that U.P.S. would wait such a long period of time, over eight years after being named a defendant herein, before asserting such a well-known statutory tort immunity claim, it is nevertheless properly reviewed as an exception of no right of action.
The exception of no right of action is peremptory and can be brought at any time, including on appeal. Lambert v. Donald G. Lambert Constr. Co., 370 So.2d 1254 (La.1979). Further, La. C.C.P. art. 927 provides that a peremptory exception of no right of action "may be noticed by either the trial or appellate court of its own motion."
With regards to the statute in question, La. R.S. 23:1032 provides:
A. (1)(a) Except for intentional acts provided for in Subsection B, the rights and remedies herein granted to an employee or his dependent on account of an injury, or compensable sickness or disease for which he is entitled to compensation under this Chapter, shall be exclusive of all other rights, remedies, and claims for damages, including but not limited to punitive or exemplary damages, unless such rights, remedies, and damages are created by a statute, whether now existing or created in the future, expressly establishing same as available to such employee, his personal representatives, dependents, or relations, as against his employer, or any principal or any officer, director, stockholder, partner, or employee of such employer or principal, for said injury, or compensable sickness or disease.
(b) This exclusive remedy is exclusive of all claims, including any claims that might arise against his employer, or any principal or any officer, director, stockholder, partner, or employee of such employer *669 or principal under any dual capacity theory or doctrine.
(2) For purposes of this Section, the word "principal" shall be defined as any person who undertakes to execute any work which is a part of his trade, business, or occupation in which he was engaged at the time of the injury, or which he had contracted to perform and contracts with any person for the execution thereof.
B. Nothing in this Chapter shall affect the liability of the employer, or any officer, director, stockholder, partner, or employee of such employer or principal to a fine or penalty under any other statute or the liability, civil or criminal, resulting from an intentional act.
C. The immunity from civil liability provided by this Section shall not extend to:
(1) Any officer, director, stockholder, partner, or employee of such employer or principal who is not engaged at the time of the injury in the normal course and scope of his employment; and
(2) To the liability of any partner in a partnership which has been formed for the purpose of evading any of the provisions of this Section.
Applying this statute to the facts of the matter before us, we find that Ms. Dufrene was in the course and scope of her employment with U.P.S. when she fell. While she was going outside to take her morning break, the accident happened on her employer's premises during work hours.
[A]ccidents that occur during periods of rest and relaxation are normally regarded as transpiring in the course of the employment. Personal activities such as: getting fresh air, smoking, resting, eating food or a snack, drinking, including water, beer or wine, taking a bath provided by the employer, using a telephone or a toilet, stair or elevator, and washing work clothes, have been classified as in the course of employment. St. Alexandre v. Texas Co., 28 So.2d 385, 388 (La.App.Or.Cir.1946) (quoting from "Trends in Workmen's Compensation," Indiana Law Journal, Vol. 21, No. 4); also see, Wex S. Malone & H. Alston Johnson, III, Louisiana Civil Law Treatise, § 163, at 347-348, in 13 Louisiana Civil Law Treatise (3rd ed. 1994).
Walker v. Acadian Builders of Gonzales, Inc., 99-0297 (La.App. 1 Cir.5/19/00), ___ So.2d ___, ___, 2000 WL 665389, at *2.
Further, based on the broad language of R.S. 23:1032, we find that the legislature intended to exclude all non-intentional tort claims of an employee against an employer for injuries which result from the conditions of the employer's premises. We, as well as all other Courts of Appeal in our state, have previously reached the same conclusion. See LeBlanc v. Continental Grain Company, Inc., 95-813 (La.App. 5 Cir.3/13/96); 672 So.2d 951; writ denied, 96-1526 (La.10/4/96) 679 So.2d 1383; Douglas v. Hillhaven Rest Home, Inc., 97-0596 (La.App. 1 Cir.4/8/98), 709 So.2d 1079; writ denied, 98-1793 (La.10/30/98), 727 So.2d 1161; Martin v. Stone Container Corp., 31,544 (La.App. 2 Cir.2/24/99), 729 So.2d 726; Hesse v. Champ Service Line, 97-1090 (La.App. 3 Cir.2/4/98), 707 So.2d 1295; Dumestre v. Hansell-Petetin, Inc., 96-1778 (La.App. 4 Cir.1/29/97); 688 So.2d 187; Robinson v. Archdiocese of New Orleans, 98-1238 (La.App. 4 Cir.3/31/99), 731 So.2d 979.
For these reasons, we find U.P.S.'s peremptory exception of no right of action to have merit, and find that the trial court should have granted U.P.S.'s exception, excluding from its judgment any liability of U.P.S. as lessee of the building where *670 plaintiff was injured. We therefore reverse that part of the trial court's judgment which awarded damages to plaintiff against U.P.S. as lessee of the building.
With regards to the third assignment of error filed by Brookhollow and U.P.S., Brookhollow alone argues that, pursuant to its lease with U.P.S., U.P.S. contractually assumed any and all liability "for the condition, operation, repair, replacement, maintenance and management of the entire Property."
In support of its argument, Brookhollow cites La. R.S. 9:3221, which provides:
The owner of premises leased under a contract whereby the lessee assumes responsibility for their condition is not liable for injury caused by any defect therein to the lessee or anyone on the premises who derives his right to be thereon from the lessee, unless the owner knew or should have known of the defect or had received notice thereof and failed to remedy it within a reasonable time.
Under this statute, a lessor is relieved of liability for damages caused by a defect in the leased premises where the lessee has assumed responsibility for the premises, unless the owner knew or should have known of the defect. The lessee thus assumes dual responsibility of both lessor and lessee for defects of which the owner was unaware.
Based on the record before us, it is clear that Brookhollow knew or should have known of the defects in the handicap ramp. Brookhollow built it. Brookhollow's lease with U.P.S. (admitted at trial as P-1) specifically references the improvements it was making to the building, including the handicap ramp, which it was required to construct by the Jefferson Parish Building Code, the ANSI Code, the Life Safety Code, and the Americans With Disabilities Act. The lease shows that it was solely Brookhollow's duty to build the ramp in a proper manner, free from any defects. Brookhollow admitted at trial that it failed to construct a handicap ramp which met the minimum safety codes, and in fact violated at least four of them.
Based on the foregoing, Brookhollow's lack of notice claim on appeal is without merit, and La. R.S. 9:3221 cannot apply in this instance to insulate Brookhollow from liability. However, an important issue remains: whether a lessor-owner may shift liability for defects in its premises to an immune lessee-employer via the lease between the two parties.
A similar situation arose in Haley v. Calcasieu Parish School Bd., 99-883 (La. App. 3 Cir.12/8/99), 753 So.2d 882; writ denied, XXXX-XXXX (La.2/24/00), 755 So.2d 242, where the terms of the lease between the lessor-owner and the lessee-employer provided that the lessee-employer
would assume responsibility for damages arising from defects in the premises. However, a lessee-employer is immune from suit in tort by its employees. The lease, therefore, shifts liability for damages arising from premises defects to an entity that cannot be held liable for such damages. The product of this agreement is that the lessor-owner derives the benefit of the lessee-employer's immunity. As we held in Wallace v. Helmer Directional Drilling, Inc., 93-901, p. 10 (La.App. 3 Cir.7/13/94); 641 So.2d 624, 629, "Such `back door' tactics to defeat tort liability cannot be countenanced."
Id. at 888.
We agree with this reasoning, and find that the liability of a building owner, whether based on negligence or strict liability, cannot be assumed by a tort-immune lessee-employer as to its own employees.
*671 With regards to their final assignment of error, Brookhollow and U.P.S. argue that the trial court erred in failing to apportion any fault to the plaintiff. As noted above, both the jury and the trial court found plaintiff free from fault after a full trial on the merits. Further, as noted in our analysis of defendants' first assignment of error, this factual determination was wholly supported by the trial transcript. It was not manifestly erroneous, and will not be altered on appeal.
There was no evidence or testimony submitted that the plaintiff did anything to cause or contribute to her fall, with the exception of defendants' transparent assertion that had she been holding the right side handrail, Ms. Dufrene may not have fallen. We are unpersuaded by defendants' assertions in their final assignment of error, and find that the trial court was well within its discretion to find plaintiff free from fault. Accordingly, defendants' fourth assignment of error is without merit.

PLAINTIFF'S ASSIGNMENTS OF ERROR
In her first assignment of error, plaintiff argues that the trial court erred "by not explicitly finding Brookhollow and U.P.S. each 100% liable for plaintiff's indivisible injury as the negligence of each defendant was the legal cause of plaintiff's entire damages."
As discussed above in our analysis of the first assignment of error filed by Brookhollow and U.P.S., we have found that the trial court was not manifestly erroneous in apportioning fault sixty percent to Brookhollow and forty percent to U.P.S. for Ms. Dufrene's injuries. Brookhollow and U.P.S. each performed distinct acts of negligence, independent of one another. Each of their actions contributed to the injuries suffered by Ms. Dufrene, but neither was the sole legal cause. Accordingly, we do not find that the trial court erred in failing to find each defendant one hundred percent liable.
In her second assignment of error, plaintiff argues that in addition Brookhollow and U.P.S., the trial court should have granted judgment against Liberty Mutual Insurance Company, their liability insurer. While we have found that the trial court erred in granting a tort judgment against U.P.S. (plaintiff's employer), we agree with plaintiff's assertion that the trial court's judgment should have included Liberty Mutual Insurance Company.
Prior to voir dire, at the commencement of trial, counsel put their stipulations on the record. One of their stipulations was that "Liberty Mutual Insurance Company insures both United Parcel Service, Inc. and 155 Brookhollow Associates for liability in connection with this claim. This policy is primary. There is a five million dollar limit on the policy, a limit of coverage for liability."
Because Liberty Mutual provided liability coverage to Brookhollow in an amount exceeding the judgment, and this fact was stipulated by the parties at trial, the trial court's October 19, 2000 judgment should have also been rendered against Liberty Mutual. We will so amend the judgment.
With regards to her third assignment of error, plaintiff argues that the trial court should not have granted a judgment in favor of Liberty Mutual in its capacity as the workers' compensation insurer. Plaintiff asserts that because Liberty Mutual did not file any pleadings after its January 27, 1992 intervention until August 24, 2000, that its intervention should have been deemed abandoned. We disagree.
Liberty Mutual's intervention, filed in its capacity as the workers' compensation insurer, *672 is a statutory lien created by La. R.S. 23:1101. The parties stipulated at the commencement of trial to the almost $300,000.00 in indemnity and medical benefits paid by Liberty Mutual as the workers' compensation insurer. The trial court was correct to render judgment, pursuant to La. R.S. 23:1101, in Liberty Mutual's favor.
In her final assignment of error, plaintiff argues that the trial court should have awarded greater damages for Ms. Dufrene's future medical care and services. Plaintiff asserts that the trial court's award of $193,544.50 in future medical expenses was only half of the total amount which plaintiff's economist, Mel Wolfson, testified was the value of her damages. Plaintiff further argues that the trial court did not award plaintiff any damages for future personal services.
Damage awards, including those for future damages, are left to the great discretion of the trier of fact, and will not be disturbed on appeal in the absence of manifest error. Stobart v. State Through Dept. of Transp. and Development, 617 So.2d 880 (La.1993). After a thorough review of the entire record, we do not find that the trial court was manifestly erroneous in its award for future damages.

PLAINTIFF'S MOTION TO DISMISS APPEAL BY INTERVENOR
Finally, we note in its separate appellate brief that Liberty Mutual, in its capacity as U.P.S.'s workers' compensation insurer, assigns as error that the trial court should not have reduced its recovery on its intervention by the degree of U.P.S.'s fault (forty percent).
Plaintiff has filed a Motion to Dismiss Appeal by Intervenor, arguing that because intervenor failed to file a petition for appeal, and likewise failed to answer the appeal filed by Brookhollow and U.P.S., that pursuant to La. C.C.P. arts.2086 and 2133, that it has not preserved its appeal rights, may not seek a reversal or modification of the judgment rendered below, and that the October 19, 2000 trial court judgment is now a final judgment as to intervenor, Liberty Mutual.
A review of the record and proceedings herein shows that plaintiff's assertions are correct: Liberty Mutual did not file a petition for appeal, nor did it answer the appeal filed by Brookhollow and U.P.S. Further, neither Brookhollow nor U.P.S. raised any of the claims raised by intervenor, Liberty Mutual, in either their petition for appeal or in appellate brief. The trial court's judgment is therefore final as to intervenor, Liberty Mutual. Accordingly, we cannot address the only issue raised by intervenor on appeal, that the trial court erred in reducing its recovery by forty percent.

DECREE
Therefore, for the foregoing reasons, we hereby grant plaintiff's Motion to Dismiss Appeal by Intervenor. Further, we hereby reverse the portion of the trial court's October 19, 2000 judgment which awarded damages in tort to plaintiff against defendant, United Parcel Service, Inc., plaintiffs employer at the time of the accident. We hereby amend the judgment to include that it also be rendered against Liberty Mutual Insurance Company, the liability insurer of 155 Brookhollow Associates. In all other respects, the trial court's October 19, 2000 judgment is hereby affirmed. All costs of this appeal are assessed equally among the parties.
AFFIRMED IN PART; AMENDED IN PART; REVERSED IN PART; AND RENDERED.
*673 PLAINTIFF'S MOTION TO DISMISS APPEAL BY INTERVENOR GRANTED.