# STATE OF LOUISIANA
## COURT OF APPEAL, THIRD CIRCUIT

## 10-529

BARBARA CARRADINE

VERSUS

REGIS CORPORATION

\*\*\*\*\*\*\*\*\*\*\*\*

APPEAL FROM THE
OFFICE OF WORKERS' COMPENSATION, DISTRICT 3
PARISH OF CALCASIEU, NO. 09-01929
CHARLOTTE L. BUSHNELL, WORKERS' COMPENSATION JUDGE

\*\*\*\*\*\*\*\*\*\*\*\*

## DAVID E. CHATELAIN*
## JUDGE

\*\*\*\*\*\*\*\*\*\*\*\*

Court composed of Marc T. Amy, Billy Howard Ezell, and David E. Chatelain, Judges.

## AMENDED AND AFFIRMED AS AMENDED.

Marcus P. Lacombe
Todd A. Townsley
Townsley Law Firm
3102 Enterprise Boulevard
Lake Charles, Louisiana 70601
(337) 478-1400
Counsel for Plaintiff/Appellee:
    Barbara Carradine

Kevin A. Marks
Jennifer L. Cooper
Galloway, Johnson, Tompkins
Burr & Smith
701 Poydras Street, Suite 4040
New Orleans, Louisiana 70139
(504) 525-6802
Counsel for Defendant/Appellant:
    Regis Corporation

---

*Honorable David E. Chatelain participated in this decision by appointment of the Louisiana Supreme Court as Judge Pro Tempore.

**CHATELAIN, Judge.**

The defendant, Regis Corporation (Regis), appeals the judgment of the workers' compensation judge (WCJ) in favor of the claimant, Barbara Carradine, finding that she suffered a compensable injury and awarding her indemnity benefits, medical expenses, penalties, and attorney's fees. We amend in part and affirm as amended.

## FACTS AND PROCEDURAL HISTORY

On March 13, 2008, Regis employed Carradine as a hairdresser at Smart Style, which is located in a Lake Charles, Louisiana Wal-Mart. Carradine was permitted to take a break, which she used to smoke a cigarette while sitting on one of the benches outside of the building. While standing up from the bench, Carradine's pant leg became caught on a chain-link fence, causing her to trip and fall, face first, to the ground. The fall resulted in immediately perceivable cuts and bruises to her chin, hands, and knees.

After the accident, Carradine reported her injuries to both Wal-Mart and her direct supervisor, Beth Farque. Carradine was given the rest of the day off to seek medical attention, and she did so by visiting her general physician, Dr. David Hardey. Dr. Hardey diagnosed a myofacial strain of the neck, as well as contusions of the chin, wrists, and knees. Carradine was able to return to work the next day, and she continued to work in the same capacity at Smart Style until February of 2009.

Carradine's neck pain increased progressively from the time of her accident, and she began suffering from headaches and numbness in a left-hand finger. While continuing to work, she began visiting an orthopedic specialist, Dr. Clark Gunderson, on September 24, 2008. Dr. Gunderson initially diagnosed her with a "cervical

1

straining type injury superimposed on cervical disc disease," following a physical examination and an X-ray. An MRI performed at the time of her first visit with Dr. Gunderson revealed that her specific neck injuries constituted cervical spondylosis and facet arthropathy of the C4-5, C5-6, and C6-7 vertebrae. Dr. Gunderson's initial course of treatment included sending Carradine to physical therapy and prescribing a muscle relaxant and an anti-inflammatory agent.

In September of 2008, Carradine also visited Dr. Don Bravin, an eye doctor, because she had been having headaches and seeing "flashes" and "floaters" since her fall. After performing routine diagnostic examinations, Dr. Bravin did not reach a definite conclusion regarding the relationship between Carradine's headaches and vision problems. He also did not provide or recommend any treatment.

At first, Carradine's pain lessened with the physical therapy, but her pain began to increase again at the beginning of 2009. Dr. Gunderson then prescribed a course of two steroid injections to the cervical spine, which provided only temporary relief. By February 13, 2009, Carradine's pain had reached the point that she felt unable to continue working, and she obtained a work release from Dr. Gunderson. She stopped working on March 6, 2009. By the time of trial, Dr. Gunderson had concluded that surgery was necessary and recommended that she undergo an anterior cervical fusion.

Carradine did not make any claim or demand for workers' compensation benefits from Regis until March 9, 2009, when she filed a disputed claim for compensation with the Office of Workers' Compensation. Regis filed an answer on March 27, 2009, denying that Carradine had suffered a compensable injury. At Regis' request, Carradine submitted to an independent medical examination (IME) from Dr. Michael Holland, an orthopedic surgeon Regis selected. Dr. Holland

diagnosed Carradine with pre-existing disc disease that was exacerbated by her fall. He opined that on June 24, 2009, the date of his examination, Carradine was capable of returning to work, but he deferred to Dr. Gunderson regarding Carradine's work status prior to his examination. Last, he opined that Carradine had reached Maximum Medical Improvement (MMI), but he also stated that she could become a candidate for surgery if her pain progressed.

After a trial on the merits, the WCJ found that Carradine's fall and subsequent injuries both occurred during the course of her employment with Regis and arose out of that employment. The WCJ stated in oral reasons that she gave great weight to the opinions of Dr. Gunderson and that the evidence presented did not discredit or otherwise contradict Carradine's version of the events. The WCJ held that Carradine was entitled to indemnity benefits for the entire time that she has not been working and that she was entitled to medical expense benefits in accordance with the reimbursement fee schedule for all of the medical diagnoses and treatments listed in her post-trial brief. Finally, the WCJ awarded penalties for Regis' failure to timely pay both the indemnity and medical expense benefits, as well as attorney's fees.

On appeal, Regis assigns error to the WCJ's judgment on five separate issues. Regis contends that the WCJ erred by: (1) finding that Carradine's accident both arose out of and occurred during the course of her employment with Regis; (2) awarding indemnity benefits to Carradine; (3) awarding medical expense benefits as causally related to Carradine's fall; (4) failing to cap any awarded medical expenses at $750 per healthcare provider; and (5) awarding penalties and attorney's fees. Carradine has answered, asserting that the award of medical expenses and penalties

3

should have been higher and requesting a further increase in attorney's fees for the cost of representation in this appeal.

## DISCUSSION

### *Standard of Review*

> In workers' compensation cases, the factual findings of the trial court are subject to the manifest error standard of review. *Smith v. Louisiana Dep't of Corrections*, 93-1305, p. 4 (La.2/28/94), 633 So.2d 129, 132; *Freeman v. Poulan/Weed Eater*, 93-1530, pp. 4-5 (La.1/14/94), 630 So.2d 733, 737-38. In applying the standard, the appellate court must not determine whether the trier of fact's conclusion was right or wrong, but that it was reasonable. *Freeman*, 630 So.2d at 737-38; *Stobart v. State*, 617 So.2d 880, 882 (La.1993); *Mart v. Hill*, 505 So.2d 1120, 1127 (La.1987). Where there are two permissible views of the evidence, a factfinder's choice between them can never be manifestly erroneous. *Stobart*, 617 So.2d at 882. Therefore, "if the [fact finder's] findings are reasonable in light of the record reviewed in its entirety, the court of appeal may not reverse, even if convinced that had it been sitting as the trier of fact, it would have weighed the evidence differently." *Sistler v. Liberty Mut. Ins. Co.*, 558 So.2d 1106, 1112 (La.1990).

*Landry v. Furniture Ctr.,* 05-643, pp. 5-6 (La.App. 3 Cir. 1/11/06), 920 So.2d 304, 309*, writ denied,* 06-358 (La. 4/28/06), 927 So.2d 290.

> Where there is conflict in the testimony, reasonable evaluations of credibility and reasonable inferences of fact should not be disturbed upon review, even though the appellate court may feel that its own evaluations and inferences are as reasonable. *Robinson v. North American Salt Co.*, 02-1869 (La.App. 1 Cir.2003), 865 So.2d 98, 105[, *writ denied*, 03-2581 (La.11/26/03), 860 So.2d 1139].

*Dean v. Southmark Const.,* 03-1051, p. 7 (La. 7/6/04), 879 So.2d 112, 117.

### *Arising Out of Employment and Course of Employment*

Regis contends that Carradine is not entitled to workers' compensation benefits. It argues that her injury neither arose out of her employment with Regis nor occurred in the course of that employment.

4

Louisiana Revised Statutes 23:1031 provides that an employee is not eligible for workers' compensation unless she has "receive[d] personal injury by accident arising out of and in the course of [her] employment." The two requirements of arising out of employment and course of employment are separate but mutually interdependent concepts used to determine whether the injury is sufficiently related to the employment to warrant coverage under the system of workers' compensation. *See Mundy v. Dep't of Health & Human Res.*, 593 So.2d 346 (La.1992). As such, a strong showing of one of these factors may counterbalance a relatively weak showing of the other. *Id.*

Generally, the arising out of employment requirement "focuses on the character or source of the risk" that caused the claimant's injury. *Mundy*, 593 So.2d at 349. Its purpose is to distinguish between employment risks and personal risks, as the statutory scheme does not ordinarily hold the employer responsible for purely personal risks. *Id.* For this purpose, courts often consider whether the risk that led to the injury was greater for an employee than for someone who does not work for the employer. *Id.*

However, the Louisiana Supreme Court has also identified a third category of risks, the nature of which is neither particularly personal nor particularly employment-related. *Id.* Furthermore, it has recognized that these neutral risks make the arising out of employment determination problematic. In these cases, the interrelated nature of the two requirements allows us to defer to the course of employment requirement and simply consider whether "the conditions or obligations of the employment caused the employee *in the course of employment* to be at the place of the accident at the time the accident occurred." *Id.* at 349.

5

The course of employment requirement focuses on the employee, primarily her "time, place, and employment activity." *Id.* An employee does not always have to be actively engaged in the performance of employment duties to be in the course of her employment. *Id.* "[A]n employee is protected during work hours, despite minor deviations from instructions or place of work, if what he does could reasonably be contemplated as humanly incidental to his service as an employee and does not unreasonably increase the risk of injury." *Robinson v. F. Strauss & Son, Inc.*, 481 So.2d 592, 593 (La.1986).

In fact, the jurisprudence of this state has long recognized that an employee typically remains in the course of her employment while she is on a permitted break.

> [A]n employee cannot, during every moment of the working day, remain at his bench or at his desk and that he must, every now and then, leave his work to get a drink, to attend to the requirements of nature or for some other similar purpose. . . . Many acts of a personal nature are clearly incidents of the employment, even though occurring during leisure time. Thus, *getting fresh air*, *smoking*, resting, eating food or ice cream, *quenching thirst*, whether by water, beer or wine, transportation to and from work, taking a bath provided by the employer, using a telephone or a toilet, or using a stairway or elevator, floors and hallways, washing and pressing working clothes, obtaining war bonds, or getting eyeglasses, have been held compensable incidents . . . of one's employment.

*St. Alexandre v. Texas Co.*, 28 So.2d 385, 388 (La.App. Orl. 1946) (emphasis added) (employees installed soft drink vending machine on premises and were permitted to use it; claimant found covered under workers' compensation law when injured by exploding bottle).

In summary, it is well established that "[a]ccidents that occur on the premises during permitted rest periods are treated similarly to accidents on the premises during meal hours, and they are generally regarded as occurring in the course of the

6

employment." H. Alston Johnson, 13 *Louisiana Civil Law Treatise, Workers' Compensation* § 163 (2009-10). *See also Dufrene v. Ins. Co. of State of Pa.*, 01-47 (La.App. 5 Cir. 5/30/01), 790 So.2d 660, *writs denied*, 01-2261 (La. 11/16/01), 802 So.2d 611; 01-2308 (La. 11/16/01), 802 So.2d 613 (employee who was injured when she tripped and fell on handicap ramp as she exited building on her morning break was injured in course and scope of her employment and on employer's premises during work hours, such that employer was entitled to tort immunity under workers' compensation law with respect to personal injury claim brought by employee); *Margin v. Barthelemy*, 93-2224 (La.App. 4 Cir. 5/17/94), 638 So.2d 291, *writ denied*, 94-2172 (La. 11/18/94), 646 So.2d 378 (employee basketball game on work premises during claimant's lunch period was a period of reasonable recreation and relaxation such that the injury sustained during such period was compensable under the workers' compensation act).

In the present case, Regis allowed Carradine to take a break, which she used to drink a soda and smoke a cigarette. Though Carradine did leave the building in which Smart Style was located, she did not leave the premises when she chose to sit on a bench located directly outside of that building. The conditions of her employment, namely its location inside the Wal-Mart, caused Carradine to take her break outside Wal-Mart where her accident occurred. Thus, even if the risk of tripping because of a defect in a fence is a purely neutral risk, Carradine's accident nonetheless arose out of her employment.

Moreover, this court has previously found that "a defect in the premises at the place of employment is 'peculiar and distinctive' to that location." *Fransisco v. Harris Mgmt. Co.*, 94-136, p. 5 (La.App. 3 Cir. 10/5/94), 643 So.2d 386, 388 (quoting

7

*Bosse v. Westinghouse Elec., Inc.*, 93-1898 (La.App. 4 Cir. 5/17/94), 637 So.2d 1157, *writ denied*, 94-1623 (La. 9/30/94), 642 So.2d 878. In *Fransisco*, this Court held that the injury to an employee who fell in the employer's parking lot on her way in to work arose from her employment because her increased exposure to the defect on the premises made the risk of this accident greater for her than for the general public. *Id.* *See also Mitchell v. Brookshire Grocery Co.*, 26,755 (La.App. 2 Cir. 4/5/95), 653 So.2d 202, *writ denied*, 95-1115 (La. 6/16/95), 655 So.2d 339; *Bosse*, 637 So.2d 1157. Thus, Carradine's accident also arose out of her employment because her position as a stylist at Smart Style required her to be on the Wal-Mart premises far more often than the general public and thereby increased her risk of suffering injury from a defect thereon.

After considering this state's well established jurisprudence on this issue and the facts of the present case, we find that the WCJ correctly found that Carradine's injury arose out of and occurred in the course of her employment with Regis. Therefore, we find no merit in Regis' first assignment of error.

***Indemnity Benefits***

Regis next contends that the following evidence shows that the WCJ manifestly erred when she awarded indemnity benefits. First, it points to a note in the medical records of Dr. Gunderson which indicates that Carradine's first "no-work slip" was approved because Carradine called the office and told a nurse that she had decided to go off work after speaking with an attorney. Next, it relies upon a record from Carradine's physical therapist's office relating to a therapy session ten days after Dr. Gunderson first took her off work. In particular, it points outs that Carradine reported non-disabling pain which only moderately interfered with her normal

8

activities. Finally, Regis contends that Carradine was able to work for eleven months after her fall without changing her duties at all. Regis argues that, together, these facts discredit both Carradine's testimony and Dr. Gunderson's opinion and ultimately prove that Carradine's injuries were not disabling.

A finding of disability requires proof by clear and convincing evidence. La.R.S. 23:1221(1)(c); *Spell v. Conn Appliances, Inc.*, 97-309 (La.App. 3 Cir. 10/8/97), 702 So.2d 797. The claimant must support her claim of disability with objective medical evidence. *Spell*, 702 So.2d 797. However, the issue of disability is a factual determination, and the fact finder's decision may not be overturned unless it is manifestly erroneous or clearly wrong. *Id.*

Here, the WCJ did not commit manifest error in finding that Carradine was unable to work because of her neck injuries. Dr. Gunderson's records, along with his "no-work slips," constitute objective medical evidence of Carradine's inability to work. Furthermore, Carradine testified that she did not discuss her inability to work with her attorney as described in Dr. Gunderson's records. The WCJ was not clearly wrong in deciding to give great weight to the opinions of Dr. Gunderson, Carradine's treating physician, or in choosing to find Carradine's testimony credible.

Last, it is well settled that workers' compensation law should not be applied to punish an employee for working through pain. *Sevin v. Schwegmann Giant Supermarkets, Inc.*, 94-1859 (La. 4/10/95), 652 So.2d 1323; *White v. Phoenix Pharmacy*, 03-1624 (La.App. 3 Cir. 4/7/04), 870 So.2d 592, *writ denied*, 04-1150 (La. 7/2/04), 877 So.2d 147. There is testimony from Carradine and her supervisor that Carradine was in pain during the time she worked after the fall. Proof that Carradine worked in pain for eleven months before being taken off work, even when

considered with the other evidence listed above, does not support a finding of manifest error on the issue of disability. Therefore, this assignment of error is without merit.

### *Medical Expenses*

Regis contests the award of medical expenses primarily asserting that the results of Dr. Holland's IME and the evidence of Carradine's previous neck injuries prove that her neck pain results purely from a pre-existing condition. Specifically, Dr. Holland opined that all of Carradine's neck problems *could* be the product of a purely degenerative condition and that carpal tunnel syndrome could have caused the tingling and numbness in her hands and arms. Regis also submitted medical records which revealed that Dr. Gunderson had previously diagnosed Carradine with the same kind of injury after a car accident in 1996.

This contradictory evidence is not sufficient to overturn the WCJ's factual determination that Carradine's disabling pain and other symptoms relate to injuries that her fall either created or exacerbated. Just as a workers' compensation claimant cannot carry her burden of proof when it is grounded in possibility, speculation, or conjecture, *Terral v. Justiss Oil Co., Inc.*, 07-1014 (La.App. 3 Cir. 3/5/08), 979 So.2d 589, Regis cannot rely solely on possible alternate explanations, even when postulated by expert medical testimony, in support of its contention that the WCJ was manifestly erroneous in this regard. The evidence regarding Carradine's treating physician's previous diagnosis of the same injury would be more significant if there was not further evidence that all of Carradine's symptoms from the 1996 accident subsided after treatment. In fact, Regis presented no evidence to show that Carradine's injuries and symptoms could not have been caused by her fall.

Furthermore, Dr. Gunderson's expert medical opinion as well as the claimant's testimony reasonably support the WCJ's finding. Therefore, this assignment of error is without merit.

In related issues, Carradine argues in brief that the WCJ erred when she limited the unpaid medical expenses to the statutory reimbursement schedule instead of the amounts to which the parties stipulated and that the WCJ should have awarded medical expenses based on the evidence submitted at trial rather than the expenses listed in her post-trial memorandum. Albeit Carradine made these two arguments at trial, the WCJ ruled contrary to Carradine on both issues.

An appellee who "desires to have the judgment modified, revised, or reversed in part . . . must file an answer to the appeal, stating the relief demanded." La.Code Civ.Proc. art. 2133. In the present case, Carradine answered the appeal but only specified two issues: the quantum of the WCJ's award of penalties and a request for additional attorney's fees for responding to the appeal. The jurisprudence has interpreted Article 2133 to mean that an answer to an appeal only operates as an appeal from those aspects of the judgment about which the answer complains. *Lolan v. La. Indus.*, 95-602 (La.App. 3 Cir. 11/2/95), 664 So.2d 616; *Liedtke v. Allstate Ins. Co.*, 405 So.2d 859 (La.App. 3 Cir.), *writ denied*, 407 So.2d 748 (La.1981). In the present case, Carradine makes no mention in her answer of her contentions regarding the reimbursement schedule or the WCJ's adoption of the expenses as enumerated in the post-trial memorandum. Accordingly, we find that the issues of the applicability of the fee schedule to the unpaid medical expenses and the WCJ's reliance on Carradine's post-trial memorandum as the basis for Regis' compensable medical obligations are not properly before us.

11

*Necessity of Prior Consent*

Regis alternatively asserts that the award for medical expenses must be capped at $750 per healthcare provider because Carradine did not obtain prior approval for these expenses from either Regis or its workers' compensation insurer.[1] To the contrary, Carradine argues, quoting La.R.S. 23:1142(E), that the cap is inapplicable when "the payor has denied that the employee's injury is compensable."

Louisiana Revised Statutes 23:1142(B)(1) provides that:

> Except as provided herein, each health care provider may not incur more than a total of seven hundred fifty dollars in nonemergency diagnostic testing or treatment without the mutual consent of the payor and the employee as provided by regulation. Except as provided herein, that portion of the fees for nonemergency services of each health care provider in excess of seven hundred fifty dollars shall not be an enforceable obligation against the employee or the employer or the employer's workers' compensation insurer unless the employee and the payor have agreed upon the diagnostic testing or treatment by the health care provider.

However, Subsection E of the statute creates an important exception: "[i]n the event that the payor has denied that the employee's injury is compensable under this Chapter, then no approval from the payor is required prior to the provision of any diagnostic testing or treatment for that injury." La.R.S. 23:1142(E).

The facts relevant to this issue are uncontested. Carradine did not claim workers' compensation from Regis until she had been receiving treatment for approximately eleven months, and Regis has not approved any medical expenses to date. However, once the claim for workers' compensation was filed, Regis filed an

---

[1] Our review of the record shows that contrary to Carradine's contention, Regis raised this issue in pre-trial and post-trial memoranda. Furthermore, Regis elicited trial testimony on the issue of whether Carradine sought pre-approval for medical expenses incurred prior to filing her workers' compensation claim. It is clear that the statutory cap is not an affirmative defense which must be pled in the answer, and the issue is purely a legal one. Accordingly, we find this issue is properly before us.

answer which included a denial that Carradine suffered a compensable injury. To determine whether Carradine's medical expenses are subject to the statutory cap, this court must resolve a question which it has not previously considered: does the exception in Subsection E apply retroactively to prevent capping of unauthorized medical expenses that were incurred before the employer denied the injury was compensable?[2]

As this is a question of statutory interpretation, we must begin with the rules of interpretation the legislature enacted. "When the wording of a Section is clear and free of ambiguity, the letter of it shall not be disregarded under the pretext of pursuing its spirit." La.R.S. 1:4. The language of Subsection B is clear that the required mutual consent must occur before the expenses are incurred. Subsection E, however, is less clear. The statute only provides that once an employer has made this denial, "no approval from the payor is required prior to the provision of any diagnostic testing or treatment." La.R.S. 23:1142(E). It does not state that only *future* testing and treatment become exempt from the requirement of Subsection B. Thus, we cannot determine from the statute's plain language whether an employer's denial regarding the compensability of an injury eliminates the cap for unauthorized medical expenses incurred prior to the denial.

"When the language of the law is susceptible of different meanings, it must be interpreted as having the meaning that best conforms to the purpose of the law." La.Civ.Code art. 10. The purpose of a law is equivalent to legislative intent. *Tensas*

---

[2] Regis suggests that *Jefferson v. Greer Timber Co.*, 618 So.2d 21 (La.App. 3 Cir. 1993), is relevant; however, in *Jefferson*, we merely found that La.R.S. 23:1142(E) applied when the defendant filed a general denial before the claimant had incurred more than $750 in medical expenses. We did not consider how Subsection E applied to medical expenses incurred before the employer made a denial.

*Poppadoc, Inc. v. Chevron USA, Inc.*, 08-1266 (La.App. 3 Cir. 5/6/09), 10 So.3d 1259, *writ denied*, 09-1265 (La. 9/18/09), 17 So.3d 976. The wording of Section 1142 suggests that the legislature did not contemplate situations in which the employee does not attempt to claim workers' compensation benefits until long after she has begun treatment for the injury. The statute's provisions apply clearly and easily to scenarios in which the employee is injured and then claims compensation from her employer before beginning any significant medical treatment. In fact, these same provisions are clear and unambiguous when applied to such facts.

Applying Section 1142 to these more typical situations makes the legislature's intent clear. After suffering a work-related injury, the employee typically notifies her employer and begins the process of claiming benefits. If the employer accepts that the injury is compensable, it becomes responsible under La.R.S. 23:1142(B) for payment of all reasonable and necessary medical expenses related to the injury. Similarly, La.R.S. 23:1142(E) functions to remove the employer from this decision-making process when it has denied any responsibility for paying workers' compensation benefits related to the injury at hand. Thus, at least one purpose of Section 1142 is ensuring that the party responsible for paying medical expenses has a say in decisions about what expenses are necessary.

These considerations suggest that a denial of compensability should completely negate Subsection B with regard to all medical expenses. In this case, if Carradine had requested benefits from Regis soon after her fall, Regis, presumably, would have denied compensability and thus lost its right to consent to the same expenses now at issue. It does not further the purpose of La.R.S. 23:1142 to punish employees for failing to request authorization from employers who do not accept their liability for

14

benefits under the law of workers' compensation. Thus, an employer who disputes the compensability of its employee's injury should not be allowed to complain that it was not given the opportunity to authorize previously incurred medical expenses.

Our interpretation of La.R.S. 23:1142(E) is also supported by a majority of the jurisprudence. In *White v. Fresenius Medical Care*, 01-1023, p. 12 (La.App. 3 Cir. 12/12/01), 801 So.2d 1239, 1247, *writ denied*, 02-138 (La. 3/28/02), 811 So.2d 945, this court stated that a workers' compensation claim "has not proceeded in standard fashion as may have been anticipated by much of the workers' compensation statutory scheme" because the claimant's injuries did not manifest directly after the accident, she did not immediately associate her medical problems with her accident at work, and her medical insurance initially paid her medical expenses. We also noted that La.R.S. 23:1142 "assumed" that an employer would normally have notice of the employee's claim for benefits and be "in a position to deny/approve the claimed expenses." *Id*. While the issue of the statutory cap was not resolved because it had not been raised at trial, the court's reasoning supports our finding that the statute did not anticipate situations in which the employee does not begin to claim benefits from the employer soon after suffering the injury and beginning to incur medical expenses.

In *Martin v. Elmwood Medical Center*, 95-415 (La.App. 5 Cir. 11/15/95), 665 So.2d 470, the fifth circuit affirmed a judgment awarding medical expenses incurred without prior consent from the employer because the defendant later denied compensability at trial. The court did not offer any supporting reasoning but simply found that the exception in La.R.S. 23:1142(E) applied. Finally, in *Stewart v. Livingston Parish School Bd.*, 07-1881 (La.App. 1 Cir. 5/2/08), 991 So.2d 469, the first circuit held that the exception in La.R.S. 23:1142(E) applied to expenses

15

incurred before the employer expressly denied the claim. While the court first noted that it considered the employer's previous refusal to approve or deny the claim as a denial, it also relied on the fact that the claimant did not immediately realize that he could make a workers' compensation claim for his injury, stating that "[t]his is not the typical fashion that workers' compensation claims are made." *Id*. at 475.

Only one case in Louisiana has adopted a contrary interpretation of La.R.S. 23:1142(E). In *Schindler v. Orleans Regional Security*, 03-522 (La.App. 4 Cir. 12/3/03), 862 So.2d 1032, the president and sole officer of the defendant company was injured in a work-related car accident but did not claim workers' compensation benefits until approximately three years after the accident, even though he had been receiving treatment for his injuries throughout this time. The insurer did not have the opportunity to approve any of these expenses, and, upon receiving the disputed claim, it filed an answer denying that the claimant had suffered a compensable injury.

The fourth circuit, in *Schindler*, reversed the WCJ's finding that the insurer's denial of compensability exempted all of the claimant's medical expenses from the statutory cap. Instead, it held that La.R.S. 23:1142(E) only applies prospectively from the time of the denial by the employer or insurer. The court disagreed with the workers' compensation judge's reasoning that the insurer would have simply denied compensability if it had been notified of the claim soon after the accident. In support of this position, it cited its previous decision in *Daniels v. Keller Supply, Inc.*, 02-2767 (La.App. 4 Cir. 8/6/03), 854 So.2d 416.

We observe that *Daniels* does not conflict with our interpretation of La.R.S. 23:1142. In *Daniels*, the claimant's employer initially provided him with treatment, but he eventually decided to seek additional treatment from his own choice of doctor

16

without requesting prior approval from his employer. The court found that the employer's subsequent denial of compensability in its pleadings did not prevent the statutory cap from applying to the unapproved expenses that were previously incurred.

Unlike the facts before us today, the unapproved expenses at issue in *Daniels* were incurred once the employer had already been furnishing some medical treatment. This difference is important because an employer who is already providing some benefit has tacitly recognized that the injury is compensable. Hence, the purpose of the statute suggests that employers in such situations have the right to approve medical expenses until they expressly or tacitly deny responsibility for paying workers' compensation benefits. In contrast, the *Schindler* court extended the reasoning in *Daniels* to find that a subsequent denial of compensability does not remove the statutory cap from unauthorized medical expenses incurred before the claimant has even decided to pursue any workers' compensation benefits.

The *Schindler* court also reasoned that "[t]o cast the [defendant] in judgment for the full amount of those medical expenses when it was never notified of the claim is unjust." *Schindler*, 862 So.2d at 1041. We disagree. Our decision to apply the exception in La.R.S. 23:1142(E) to unauthorized medical expenses incurred before the employee decides to claim workers' compensation benefits ensures that claimants in this situation are not unnecessarily deprived of reimbursements for medical services which the employer is typically required to furnish. Next, no employer who accepts that the employee has suffered a compensable injury is deprived of the opportunity to participate in the decision about what medical services will be furnished. Finally, no employer is automatically deprived of the opportunity to take

17

advantage of the statutory cap created in La.R.S. 23:1142(B); employers in this situation are simply required to choose between disputing compensability and limiting their liability under the statutory cap.

Because Regis continues to deny that Carradine suffered a compensable injury, the exception in La.R.S. 23:1442(E) applies, and none of Carradine's medical expenses can be capped because of her failure to obtain the prior consent of Regis or its workers' compensation insurer. The judgment below is not in error.

***Penalties and Attorney's Fees***

Finally, both parties challenge the award of penalties and attorney's fees. Regis contends that no penalties or attorney's fees should have been awarded, and Carradine argues in her answer that the amount awarded should have been higher.

The statute governing payment of benefits, La.R.S. 23:1201, also provides for penalties and attorney's fees under certain circumstances. The applicable provisions regarding payment of benefits state:

> B. The first installment of compensation payable for temporary total disability, permanent total disability, or death shall become due on the fourteenth day after the employer or insurer has knowledge of the injury or death, on which date all such compensation then due shall be paid.

> E. Medical benefits payable under this Chapter shall be paid within sixty days after the employer or insurer receives written notice thereof.

La.R.S. 23:1201(B) and (E).

Furthermore, La.R.S. 23:1201(F) provides:

> F. Failure to provide payment in accordance with this Section . . . shall result in the assessment of a penalty in an amount up to the greater of twelve percent of any unpaid compensation or medical benefits, or

fifty dollars per calendar day for each day in which any and all compensation or medical benefits remain unpaid or such consent is withheld, together with reasonable attorney fees for each disputed claim; however, the fifty dollars per calendar day penalty shall not exceed a maximum of two thousand dollars in the aggregate for any claim. The maximum amount of penalties which may be imposed at a hearing on the merits regardless of the number of penalties which might be imposed under this Section is eight thousand dollars. . . .

. . . .

(2) This Subsection shall not apply if the claim is reasonably controverted or if such nonpayment results from conditions over which the employer or insurer had no control.

The WCJ awarded penalties of $2,000 each for Regis' failure to timely pay indemnity benefits and medical expenses. The facts clearly establish that Regis did not pay either of these claims within the time limits required by La.R.S. 23:1201(A) and (E). Thus, Carradine is entitled to each of the penalties unless they were reasonably controverted. A claim for benefits has been reasonably controverted when the employer "engaged in a nonfrivolous legal dispute or possessed factual and/or medical information to reasonably counter the factual and medical information presented by the claimant throughout the time he refused to pay all or part of the benefits allegedly owed." *Brown v. Texas-LA Cartage, Inc.*, 98-1063, p. 9 (La. 12/1/98), 721 So.2d 885, 890. The decision to impose penalties and attorney fees is essentially a factual issue subject to the manifest error or clearly wrong standard of review. *Authement v. Shappert Eng'g*, 02-1631 (La. 2/25/03), 840 So.2d 1181.

Regis' argument that Carradine's break-time injury did not arise out of or occur in the scope of her employment is an argument long rejected. *See Dufrene*, 790 So.2d 660; *Margin,* 638 So.2d 291; and *St. Alexandre*, 28 So.2d 385. As previously discussed, Louisiana jurisprudence has clearly established both that permitted breaks

19

fall within the course of employment and that defects on the employment premises meet the "increased risk" test. In short, Regis had no reasonable basis to deny that the injury was compensable.

Regis' contention regarding the statutory cap under La.R.S. 23:1142 is a nonfrivolous legal dispute, as it is jurisprudentially supported. However, this argument does not justify Regis' failure to reimburse Carradine for the emergency treatment she received from Dr. Haley or the first $750 of nonemergency services each healthcare provider provided. There was no reasonable basis for refusing to pay for Carradine's emergency treatment and initial diagnostic testing. Thus, the WCJ did not err when she awarded the maximum penalty of $2,000 for Regis' failure to pay at least this portion of her medical expenses.[3]

Similarly, Regis could not reasonably controvert Carradine's claim for indemnity benefits because it did not possess enough factual and medical evidence to form a reasonable belief that Carradine's injury was not actually disabling. During the fourteen-day period after March 9, 2009, when Carradine made her injury known to Regis, the information available to Regis did not support the theories it later developed for use at trial. She had not yet undergone the IME, so Regis did not yet have any contradictory medical evidence. Its only real bases for denying payment were Carradine's eleven months working in pain after her fall before quitting and the fact that she was already engaged in a third-party lawsuit regarding the same accident. These facts are simply insufficient to reasonably controvert a claim supported by an expert medical opinion. Regis violated La.R.S. 23:1201(A) by failing to timely pay

_____

[3] Carradine first gave Regis written notice of her medical expenses on March 9, 2009, and Regis' sixty-day payment period elapsed on May 8, 2009. Far more than forty days elapsed between May 8, 2009 and the date of the judgment, so the $2,000 maximum is necessitated under the fifty dollars per day penalty calculation.

indemnity benefits, and the WCJ did not err when she awarded a $2,000 penalty for this violation. Additionally, the facts and reasoning supporting both penalty awards also justify the award of attorney's fees under La.R.S. 23:1203(F).

Carradine does not offer reasons or argument in support of her assertion that the amount of penalties the WCJ awarded should have been higher. We further note that the WCJ awarded the maximum amount of penalties for each violation that it found, and no other violations of a penalty provision have been alleged. Therefore, no additional penalties could have been awarded.

Finally, Carradine answered Regis' appeal seeking higher attorney's fees in the trial court as well as additional attorney's fees corresponding to the work done on appeal. She failed to brief the issue of the WCJ's assessment of attorney's fees; thus, we find that claim abandoned. *See* Uniform Rules—Courts of Appeal, Rule 2–12.4. We are left only with Carradine's request for additional attorney's fees for defending the WCJ judgment. Although we have not accepted Carradine's arguments in toto, she has nonetheless successfully defended the WCJ's judgment in her favor. Therefore, we award Carradine additional attorney's fees in the sum of $2,500 for work at the appellate level.

## DECREE

For the reasons assigned, the judgment of the Workers' Compensation Judge is affirmed. The judgment is amended, however, to award Carradine additional attorney's fees in the sum of $2,500.

**AMENDED AND AFFIRMED AS AMENDED.**

21